Hemphill, C. J.
The transcript of the record was filed by the defendant in error and he prays for an affirmance of the judgment and for the damages allowed in cases of delay. The judgment was rendered on the 27th September, 1844, and the writ of error, was not sued out until the 1st August, 1846. The errors assigned are:
1st. That the court erred in rendering judgment in said suit, because the same'was instituted without the knowledge or consent of the plaintiff, Nall, as appears by a note which was filed in the said court to the judge thereof by said Nall, instructing and requesting the said judge to dismiss the same.
2d. That the court erred in rendering judgment on the notes sued • on without a writ of inquiry and finding of. the jury, as the same were payable in current bank notes.
3d. That the court erred in rendering judgment because the whole proceedings in said case were irregular and informal.
*(175) The record furnishes no evidence of the fact alleged in the first, ground assigned. It is therefore not a proper subject for-our consideration or decision and will be passed without further remark. Had the plaintiff, Nall, or the real owner of -the demand sued on, been opposed to the prosecution of the suit it is not probable that execution would have been issued and levied, and nearly two years permitted to expire, without an attempt to restrain or reverse a judgment which was rendered without the consent of the party plaintiff.
As to the second ground we are of opinion that the court did not err in treating the demand as liquidated and rendering judgment final without the intervention of a jury.
Bank notes not being authorized or issued by law in this country have within its boundary but a limited circulation; and the terms “current bank notes” are rarely employed as descriptive of the currency in which an obligation is to be discharged. But such terms as “bank notes,” “good bank notes,” or “current bank notes,” when employed in this community, import, in their ordinary acceptation such bank bills only as are redeemable in gold and silver, or are equivalent thereto in the nearest great commercial mart, viz.: the city of New Orleans.
This popular signification of the term, when used in this state, could, ex officio, be taken notice of by the court; and there was therefore no error in treating the demand as liquidated and rendering judgment accordingly. 1 Chit. Plead, p. 251.
Here this opinion might conclude, but we deem it advisable to notice a suggestion in the brief that a note for one thousand dollars, payable in cattle, current bank notes or other specific articles, becomes an absolute obligation to pay the amount in specie on default of the obligor in the contract. This proposition is not questioned when the stipulation is for the delivery of goods or articles of property which are generally understood as being embraced under the designation of specific articles; and this construction is given and enforced because it is consistent with the language and intention of the parties. The promise is, to pay one thousand dollars in cattle or other articles of property, and the obligation cannot be satisfied by a less amount, whether in specie or in property at a fair valuation.
But bank notes, promissory notes of Texas, or other evidences of a circulating paper medium, are not in such contracts understood or treated as specific articles. They are considered as money, as a currency, whatever may be their rate of circulation, whether at par or depreciated below the standard of value. By the general usage of the community where such qualifying terms are employed in eon- *(176) tracts the obligation is not, under all circumstances, considered as absolute for the payment of the nominal amount of the contract in specie or its equivalent; but only for the payment of that sum, m numero, in the bank bills or other evidences of the paper currency designated in the agreement. The difference between a note stipulating for one thousand dollars in property and one calling for the same amount in Texas promissory notes is so obvious as to strike the understanding without reasoning or illustration.
The one can be extinguished only by one thousand dollars in lawful coin or its equivalent; the other is discharged by its nominal numerical amount in the paper currency or the specie valuation of that nominal amount.
In both instances the contracts are expounded in accordance with the intention of the parties; and this is the governing principle in all constructions.
A contract, in 1840, for the payment of one thousand dollars in the promissory notes of Texas, was equivalent to one hundred and fifty or two hundred dollars in specie. Is the construction, which would impose on the defaulting obligor, the payment of one thousand dollars in specie, justifiable by any sound rule of interpretation or principle of law? Such an exposition of the contract could not be given; so heavy a penalty could not be inflicted without incurring the reproach of one of the most eminent of judges, that for “ courts of justice to determine words against the intention of the parties, and against the generally received sense and acceptation of the words themselves, is laying a snare to entrap mankind.” Cowp. 720.
A contract for the payment of a sum in bank notes, or other paper currency, may or may not be equivalent to that sum in specie. The extent of the obligation depends on the meaning which usage aflixes to the terms, at the time the contract was made or is expounded.
Usage gives force and effect to language, and as terms are generally understood in the ordinary transactions of life, so should they be construed by courts of justice.
Let the judgment be affirmed with damages for the delay.
As to the construction of the terms “ bank notes,” “ currency of the country,” etc., vide 5 Litt. 335; 3 Mon. 149, 166; 2 J. J. Marsh. 463; 7 Mo. 595; 9 id. 697; 7 Ala. 42; 4 id. 88, 140; 5 id. 475.