P. WILLIAMS ET AL. v. HENRIETTA ARNIS.

The rule that an obligation payable in specific property cannot be paid with less than the amount in specie, or its equivalent in property, does not apply to a note made payable in "bank notes," "currency of the country," or any other paper currency, whether circulating at par or not.

Such contracts will be construed according to usage of the community, as the best evidence of the intention of the parties.

Such an obligation is not, under all circumstances, absolute for the payment of nominal amount of the contract in specie, or its equivalent; "but only for the payment of the sum *in numero*, in the 'bank bills,' or other evidence of paper currency designated in the agreement." The difference between a note stipulating for a thousand dollars in property, and one calling for the

same amount in Texas promissory notes, is so obvious as to strike the understanding without reasoning or illustration. The one can be extinguished only by one thousand dollars in lawful coin, or its equivalent; the other is discharged by its nominal amount in the paper currency, or the specific value of that nominal amount. (Paschal's Dig., Art. 220, Note 283, p. 144.)

Where the note was given on the 1st day of January, 1865, payable twelve months after date in "current funds," and the proof was, as in the following statement of the case, the court properly charged the jury to ascertain "from the evidence, whether the parties intended some paper currency, other than confederate money, and if they did, to render a verdict in favor of the plaintiff for the value of the same at the maturity of the note."

That "current funds" did not mean specie, but the representative of it, admits of little doubt; and what current funds the parties intended might be established by parol evidence.

The terms "bank notes," "current bank notes," and "current funds," when used in notes and obligations, import generally, in their signification, such as are convertible into gold and silver at par.

The jury having doubtless found that the parties contracted in Texas, on 1st January, 1865, for greenbacks, to be paid twelve months after date, (that being the only paper currency known in Texas when the note matured,) the court refused to disturb the verdict.

If it be conceded that the hired negroes were legally and constitutionally emancipated at or after the date of this note, (January 1, 1865,) yet if they, under the contract made by the parties, went into the employment of the defendants, and continued in their service under the contract until the end of the term of hiring, there could be no pretense of a failure of consideration in whole or in part. The defendants did not contract for the title to the negroes, but only for their labor for the year 1865, and it devolved upon them to prove, as an indispensable fact, that they had been deprived of the labor, in whole or in part, or that they did not realize it under the contract, in order to support their plea of the failure of consideration.

Where a party moves for a new trial on the ground of newly-discovered evidence, he must show that he used due diligence to discover the evidence. (Paschal's Dig., Art 1470, Note 566.)

ERROR from Cherokee. The case was tried before Hon. REUBEN A. REEVES, one of the district judges.

This was a suit instituted by Henrietta Arnis, defendant in error, against Williams & Meadow, plaintiffs in error, 26th February, 1866, on a promissory note, as follows:

"$700. Twelve months after date, I promise to pay Mrs. Henrietta Arnis or bearer seven hundred dollars, for the hire of three negroes, Ben, Charles, and Eliza, to be paid

in current funds, with eight per cent. interest after maturity, if not punctually paid.    P. WILLIAMS,

"JANUARY 1, 1865.    H. J. MEADOW."

To which defendants, on 26th February, 1866, answered substantially:

1. To the jurisdiction of the court, that the note showed on its face that it was for a sum less than $100.

2. That the note was procured by fraud, in this, that the plaintiff represented, at the time it was given, that she was the owner of said negroes, when in fact they were free.

3. That it was well understood, contracted, and agreed by the parties, that the note was to be paid in confederate money, and that the term "current funds" was intended for this; and that plaintiff received confederate money from other parties for other negroes hired to them.

On the 28th February, 1866, defendant, Williams, filed amendment, substantially as follows:

1. That the note was fraudulently procured, in this, that the plaintiff represented said negroes to be her right and property, and that she had the right to hire them for the year 1865; but that they were not her property, but were freed by the proclamation of the President of the United States on the 1st January, 1863, and which proclamation has since been confirmed by the amendment to the Constitution of the United States.

2. Failure of consideration, in this, that said negroes, being freed, did not work so as to earn wages, and that, about June, 1865, said proclamation went into complete effect, and said negroes had the right to control their own time, and that defendant lost the control and benefit of them for at least one-half the year.

3. That it was intended and understood by the parties that this contract was made with reference to confederate money, and the note was intended to be paid in this currency, which was then not worth more than twenty or thirty for one, and that defendant proposed and tendered

to pay off this note, before suit, in specie, at the rate of twenty for one.

On the 29th March, defendant again amended, substantially, that said note was given for the hire of said negroes for the whole of the year 1865, and that it was understood and agreed that it was to be paid in confederate money, which at the time was not worth more than from twenty to forty for one, and at the maturity of the note was worthless, and that on the 28th June, 1865, said negroes were made free and self-controlling, so that there was a failure of consideration.

On the 19th September, 1866, plaintiff amended, substantially:

1. That by "current funds," as mentioned in said note, was intended whatever currency or money was current at the maturity of said note on the 1st January, 1866, and which was alleged to have been gold and silver.

2. That by "current funds," as mentioned in said note, was intended whatever currency or money was current at the maturity of said note, on the 1st January, 1866, and which was alleged to have been United States currency or greenbacks, and which was then of the reasonable value of, to wit, $1 in this for $1 in specie, and asks judgment for this amount.

On the 15th March, 1866, plaintiff excepted generally and specially to the said answer of defendant, Williams, filed on the 28th February, 1866, and the court sustained the second and fourth special exceptions, and so much of the exception to said answer, relating to an alleged tender, as to require the defendant to aver when the tender was made and to whom made, and overruled the others. It is deemed necessary in this attitude of the case to consider those exceptions only which were sustained, and which are substantially as follows:

"2. That said fraud, if any, was a fraud upon said negroes, and defendant shows himself to have been a *particeps*

*criminis* to said fraud, and should not be permitted to avail himself of the services of said negroes, and then seek to shield himself under his own wrong and turpitude, and thus commit a double fraud."

"4. That it does not appear in and by said answer that said negroes were lawfully freed; that the President had any lawful or constitutional right to issue said proclamation; and that it does not appear that said amendment was made prior to said hiring."

"7. And for the special exception to the plea of tender, that the same is uncertain, does not show when and where the same was tendered, to whom tendered, and the amount tendered."

And, on the 15th March, 1866, plaintiff excepted generally and specially to the answer of both said defendants filed on the 27th February, 1866.

The following special exceptions were sustained, and they only are deemed necessary to be considered, as the case is now presented:

"1. That the plea of jurisdiction is not true in fact, and not supported by the record.

"2. The same special exceptions which were sustained to the answer of defendant, Williams.

"3. To so much of said answer as sets up that plaintiff hired other negroes to other parties, and received confederate money, as setting up no defense to this action."

"On the trial, plaintiff's first special exception to defendant's (Williams) answer overruled; second exception sustained; No. 3 overruled; fourth exception sustained; No. 5 overruled; and special exception of the plaintiff, relating to tender sustained so far as to require defendant to answer when the tender was made, and to whom made. Exception to the plea of jurisdiction sustained. Exceptions to so much of said answer setting up payment in confederate money by other parties sustained. Verdict and judgment for plaintiff $466 66 principal, and $26 96 interest."

Historically it is judicially known and generally noticed, that the proclamation of President Lincoln declared the slaves in Texas and other rebel States free on the 1st day of January, 1863. They remained in slavery, however, until after the amnesty proclamation of President Johnson, the proclamation of General Gordon Granger, the universal amnesty oaths of the people, and the great practical revolution by which slaves all went free in Texas, in the summer of 1865. So that the great question of a *vis major* was intended to be presented by the pleadings, and was universally known to the country. So it was historically true, that on the day of hiring, 1st January, 1865, there existed laws of the confederate congress which punished the dealing in United States treasury notes; and no one could have safely bargained for their payment *in futuro.* The counsel then intended to present the question, whether a contract to be discharged in "current funds," which was proved to have meant "confederate treasury notes," and for over two years preceding the contract, could have meant nothing else in Texas, was such an illegal dealing as rendered the contract null and void?

The court, upon the facts proved and judicially known, charged the jury as follows: "The note read in evidence entitles the plaintiff to recover the amount of money therein agreed to be paid, unless the evidence shows that the parties intended, by the expression 'current funds,' that the same was to be paid in confederate money, and then the plaintiff could only recover the value of the confederate currency, at the maturity of the note, according to the evidence. It is necessary for the defendants to prove that such was the intention of both the plaintiff or her agent and the defendants; and, unless this has been done, neither the confederate currency nor its value would be the measure of compensation to which the plaintiff is entitled. But the jury will inquire and ascertain from the evidence whether the parties intended some other paper

currency, and if they did, then the plaintiff could recover
the value of the same, at the maturity of the note, accord-
ing to the proof.    'Current funds,' as expressed in the
note, does not import in what currency the note is to be
paid, and the intention of the contracting parties at the
time the note was given, as shown from the evidence, so
find; and, if for the plaintiff, she is entitled to interest,
at the rate of eight per cent., from the maturity of the
note.   If the consideration of the note has failed, that is,
if the negroes left the service of the defendants before the
expiration of the hiring, it would be incumbent on the de-
fendants to prove it, and, if it has not been done, the jury
need not consider that part of the defense as set up in the
pleadings.   If you find for the plaintiff, state the amount.
If for the defendants, so say by your verdict."

As a different view of the law has been taken by the
Supreme Court in subsequent cases, which will appear in
volumes 30 and 31, the *Reporter* deems it best to give the
statement of facts and the instructions in full.

The plaintiff read the note hereinbefore described.   He
then introduced Thomas J. Word, who testified that, at
the maturity of the note, January 1, 1866, greenbacks and
gold and silver were the currency of the country.   At the
date of the note, January 1, 1865, confederate money was
the currency of the country.   Witness, in writing a note
payable in current funds, would mean funds current at the
maturity of the note.   But there was no custom in the
country at the time fixing the meaning of current funds.
Confederate money was all the paper money in the coun-
try at the date of the note, and was without any value at
the maturity of the note, on the 1st day of January, 1866.
At the date of the note, confederate money was worth
twenty dollars to fifty dollars for one; at the maturity of
the note it was worth nothing.   Proof by the defendants.

T. J. Durrett, a witness for the defendant, testified, that
he knew what the note sued on was given for; it was for

the hire of negroes, belonging to the plaintiff, for 1865. It was a general hiring-day of plaintiff's negroes, by her agent, a Mr. Harris. Witness and defendant were there that day. Witness did not see the note given; he had left the ground before the note was given. Plaintiff's agent, Mr. Harris, told him and others, on the day of hiring, that he was taking confederate money, and this seemed to be the general understanding. The witness said that one of the negroes was hired for $50 in coin. Witness hired one of the negroes from plaintiff's agent the same day, and gave his note payable in current funds. The agent, Harris, said he would take confederate money now. Witness got the money the same day, and paid off his note the same day, but after it was given in confederate money. Witness claimed that plaintiff should refund to him a part of the hiring paid, as he paid in advance the whole year, and plaintiff's agent refunded to witness accordingly, in hiring notes like the one sued on, at the rate of twenty dollars for one.

Cross-examination by plaintiff: Plaintiff's counsel asked the witness, Durrett, why it was, if the notes given for the hiring of these negroes were to be paid in confederate money, that the words confederate money were not put in the notes in place of current funds. Witness replied, that there was a good deal of grumbling by persons who hired negroes because the words current funds were used. He said he was not present when the note sued on was given, and knew nothing about it. Plaintiff's counsel asked the witness if it was not true that said agent stated, on the day of the hiring, that he was then willing to take confederate money, if paid down; but, if he had to take the notes, he would take them payable in whatever might be current at the maturity of the note; and that, rather than give their notes, several persons preferred to pay, and did pay at the time, confederate money; and was it not true that he, the witness, rather than run the risk that some other

money might be current funds when the note matured, obtained the confederate money that day, and paid off the note which was due in twelve months; to which question witness answered, that he always paid off his notes when he had the money; that he did not like for his notes to be out, and that he got the money on the same day, but after he gave his note, and paid it off.

It is but just to the court to remark, that when the opinion in this case was delivered, the country was in a great state of uncertainty as to what would be finally settled as to the great events of the revolution; hence questions involving contracts of the kind were not decided, unless they were forced upon the court.

The affidavits for a new trial have not been given in this statement. They only proposed to prove the things already proved, or else those which were universally, if not judicially known.

No brief for the plaintiff in error was furnished to the *Reporter*.

*Browne & Browne*, for defendants in error.—The first exception sustained was the second special exception to defendant's (Williams) answer, in substance, that said fraud, if any, was a fraud upon the negroes, and defendant shows himself to have been a *particeps criminis* to said fraud, and should not be permitted to avail himself of the services of the negroes, and then seek to shield himself under his own wrong and turpitude, and thus commit a double fraud.

It is a familiar principle of equity, that he who seeks equity should do equity, and that when a party "has participated equally and deliberately in the fraud, or when the agreement which he seeks to set aside is founded in illegality, immorality, or base and unconscionable conduct on his part, in such cases courts of equity will leave him to the consequences of his own iniquity, and will decline to assist

him to escape from the toils which he has studiously pre-
pared to entangle others," &c.   (2 Story Eq. Jur., § 697.)

The second exception sustained was the fourth special
exception to defendant's (Williams) answer, substantially
that it does not appear in and by said answer that said ne-
groes were lawfully freed, that said proclamation was legal,
or that said amendment was made prior to said hiring.

In support of this exception, it is respectfully submitted,
that there is nowhere to be found in the Constitution of the
United States, either expressly or by implication, authority
for the President to issue this emancipation proclamation,
and hence that the same could have no legal binding force
and effect.  We understand that this was admitted by Judge
DUVAL himself, in a recent case at Austin, and that the pro-
clamation had no legal binding force for any purpose, until
sustained and enforced by the military.   This is judicially
known to the court not to have happened, in this State at
least, until after the surrender.

The third exception sustained was the special exception
to the plea in regard to the tender, &c.   This was held by
the court to be defective, so far as to require defendants to
aver when the tender was made, and to whom made.

The fourth exception sustained was the exception to the
jurisdiction, that the amount sued for was under $100, as
plead in the answer of both defendants; that the same was
not true in fact, and not supported by the record.

The amount sued for was $700, and this was conclusive
of the question of jurisdiction.   (Tarbox v. Kennon, 3
Tex., 7; Graham v. Roder, 5 Tex., 146.)

The fifth exception sustained was the special exception
to so much of the answer of both defendants as sets up the
hiring of other negroes to other parties, and the payment
by them of confederate money.

If this was true, it was not proper to encumber the record
in this case with it.   It was a mere circumstance, which
might be given in as evidence, and need not be plead.  The

defendants had the full benefit of it without pleading it, as will be seen from the statement of facts.

The second error assigned is, that "the court erred in the charge to the jury, as follows: 'But the jury will determine and ascertain from the evidence whether the parties intended some other paper currency, and, if they did, then the plaintiffs could recover the value of the same, at the maturity of the note, according to the proof.'"

The defense set up was, that by the expression "current funds," was intended confederate money, while the plaintiff contended that by it was meant gold and silver, or national currency, or whatever circulated as money at the maturity of the note, and the court, after charging that if, from the evidence, they believe that confederate money was intended, then the plaintiff could recover only the value of the money at the maturity of the note, and then proceeded to give that part of the charge complained of, and then adds: "Current funds, as expressed in the note, does not import in what currency the note is to be paid, and the intention of the contracting parties at the time the note was given, as shown from the evidence, must determine the question."

The term confederate money not being mentioned, *eo nomine*, but the words "current funds" being used instead, the whole question became one, not so much for judicial construction, as a question of intention for the jury, and this was the issue raised by the defendants themselves, and the charge was but responsive to it. (Roberts v. Short, 1 Tex., 373.)

The third error assigned is, that "the court erred in the charge to the jury further, as follows: 'If the consideration of the note has failed, that is, if the negroes left the service of the defendants before the expiration of the hiring, it would be incumbent on the defendant to prove it, and if this has not been done, the jury need not consider that part of the defense as set up in the pleadings.'"

That the defense should prove that the negroes left there can be no question. This was an affirmative matter of defense alleged by them, and, of course, the *onus probandi* rested on them to make it available. (McKinney & Williams v. Bradbury, Dal., 441)

SMITH, J.—We see no error in the action of the court sustaining the exceptions to the answer of the defendants of which they can complain.

The plaintiff below contends that the note in suit is payable in specie, with the alternative given the makers to pay it in "current funds;" and, like an obligation payable in specific property, upon default of the maker, became an absolute demand for the amount named in the note, and cannot be satisfied with a less amount in specie. The rule, that an obligation dischargeable in specific property cannot be paid with less than the amount in specie or its equivalent in property, does not apply to a note made payable in "bank notes," "currency of the country," or any other paper currency, whether circulating at par or not. Such contracts will be construed according to usage of the community, as the best evidence of the intention of the parties; and, as said by Chief Justice HEMPHILL, in the case of Fleming v. Nall, (1 Tex., 248,) "Such an obligation is not, under all circumstances, absolute for the payment of the nominal amount of the contract in specie or its equivalent, but only for the payment of the sum *in numero*, in the "bank bills" or other evidence of paper currency designated in the agreement. The difference between a note stipulating for $1,000 in property, and one calling for the same amount in Texas promissory notes, is so obvious as to strike the understanding without reasoning or illustration. The one can be extinguished only by $1,000 in lawful coin, or its equivalent; the other is discharged by its nominal amount in paper currency, or the specific value of that nominal amount."

In accordance with the doctrine here announced, the court below was correct in charging the jury to ascertain from the evidence whether the parties intended some paper currency other than confederate money, and, if they did, to render a verdict in favor of the plaintiff for the value of the same at the maturity of the note.

That "current funds," in which the note is made payable, does not mean specie, but the representative of it, appears to admit of but little doubt; and what species of "current funds" it was intended by the parties it should be paid in is left uncertain, and is open to explanation by verbal evidence and the determination of the jury. (1 Tex., 373.)

The terms "bank notes," "current bank notes," and "current funds," when used in notes and obligations, import generally, in their signification, such as are convertible into gold and silver at par. (1 Tex., 248; 1 Litt., 335; 7 Mo., 595; 2 J. J. Marsh., 463; 3 Monr., 167.) And such would be the construction, *prima facie*, of such terms, until the contrary be shown by the party contesting it.

The verdict in this case was for about two-thirds the amount of the note sued upon. Doubtless the jury concluded the note was payable in the United States currency, which was proved to be in circulation here at the maturity of the note, deducted the amount of the depreciation, and rendered a verdict for the residue. There was no evidence of the value of that currency at the maturity of the note, but as the jury were at liberty, under the presumption that the note was payable in par funds, to render a verdict for the whole amount of the note, without any deduction for the depreciation of that currency, and having found a verdict for a less amount, it was to the advantage of the defendants, and can afford them no grounds of reversal.

There was no satisfactory evidence that it was the intention of the parties that the note should be paid in confederate money.

xxx—4.

If it be conceded that the hired negroes were legally and constitutionally emancipated at or after the date of this note, (January 1, 1865,) yet if they, under the contract made by the parties, went into the employment of the defendants, and continued in their service under the contract until the end of the term of hiring, there could be no pretense of a failure of consideration in whole or part. The defendants did not contract for the title to the negroes, but only for their labor for the year 1865; and it devolved upon him to prove, as an indispensable fact, that he had been deprived of the labor in whole or part, or that he did not realize it under the contract, in order to support his plea of the failure of the consideration, (Randen v. Toby, 11 How., 520,) which he has not done; and we are of opinion that the court correctly charged the jury on this branch of the case.

We believe the court did not err in overruling the defendants' motion for a new trial. The verdict of the jury was fully sustained by the evidence and the law of the case.

The ground that the defendants were surprised at the evidence of their own witness, in his not establishing the fact that it was the understanding of the parties that the note was payable in confederate money, is not tenable. He should have been more diligent, and learned of the witness before the trial what his evidence would be. Such negligence in the preparation of a cause is not excusable. It must be shown that they used due diligence in attempting to procure the evidence of the facts in the cause. (3 Tex., 50.) If the witness, upon inquiry, had intentionally withheld from the party his evidence, or intentionally deceived them, that fact might relieve them of the charge of negligence in the preparation of their cause. (17 Tex., 73.) It does not appear that that was done however.

If it were the understanding of the parties that the note was payable in confederate money, that fact was known to defendants, and it would seem that, by the use of ordi-

nary diligence, they could have discovered before the
trial the witness, Crume, or some other person, by whom
that fact could have been proved. The defendant, Wil-
liams, states in his affidavit that he can prove by Crume
that it was the understanding of the parties that the note
was payable in confederate money; that this evidence had
been communicated to him since the trial, and that he had
used "due diligence" to procure it. He appends the affi-
davit of Crume, but does not state what it was that he did
to procure this evidence, or in what the "due diligence"
consisted. This he should have done. (21 Tex., 171.) The
evidence is cumulative at best. (3 Gr. & Wat. on New
Trials, 1046; 3 Tex., 50; 3 Humph., 222.) And he does
not state this is the only witness by whom the fact could
have been proved.

If he lost the labor of the negroes after the middle of
June, 1865, that fact was fully known to him, and was set
up in his answer. He does not show that he had used any
diligence whatever to secure the evidence of the fact at the
trial, nor does he give the names of the witnesses by whom
he expects to make this proof on a new trial, nor does he
append their affidavits, or offer any excuse for their non-
production; this he should have done, as repeatedly decided
by this court.

Upon the whole, we are of opinion there is no error for
which the judgment should be reversed, and therefore it is

AFFIRMED.