No. 2460.

THOMAS DWYER *v.* THE CITY OF BRENHAM.

1. EVIDENCE—CUSTOM.—When there is nothing in a contract to negative the inference that the parties contracted with reference to the usage or custom which prevails in the particular trade or business to which the contract relates, then the usage may be shown in evidence for the purpose of ascertaining with greater certainty what was intended by the words or terms used in the contract; and this, though a meaning may

be thereby given to words contradicting that which would attach to them generally. This rule, even when there is no ambiguity in the contract, is especially applicable in a case where the literal and usual construction of the words used would render the contract so unconscionable that no sane man would have entered into it. See opinion for an illustration of the rule.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

*C. R. Breedlove* and *Frank Keifer, Jr.*, for appellant.

No brief on file for appellee.

WILLIE, CHIEF JUSTICE. This is a suit by Dwyer to recover of the City of Brenham twenty-three thousand seven hundred and fifty-two dollars and fifty-two cents for work and labor performed by William Pressly in printing and binding the ordinances of that city. The work was done under express contract, and, after Pressly had received ninety dollars in part payment of his services, he transferred the balance due to Dwyer. Judgment went below in favor of Dwyer for two hundred and twenty-three dollars and sixty-six cents, and from this judgment both parties appealed.

Dwyer claims that he should have received twenty-three thousand seven hundred and fifty-two dollars and fifty cents, and the city claims that his real demand was too small to be within the jurisdiction of the district court.

Whether Dwyer was entitled to more money than he received depends upon whether he has placed the proper construction upon this portion of the contract, viz: "When said work [that is, the printing and binding of the ordinances] is complete, delivered and accepted, the city is to pay for the same at the rate of one dollar and twelve and a half cents per page for the first one hundred copies, and for each additional copy desired over one hundred they are to pay at the rate of sixty cents per page. The city is to take not less than one hundred and twenty-five copies."

Dwyer's contention is that this bound the city to pay one dollar and twelve and a half cents per page for all the pages contained in one hundred copies, and sixty cents per page for all contained in the additional twenty-five copies to be furnished over and above the one hundred. We do not think that this is, by any means, the necessary construction of the language. We think it susceptible of the construction that the city was to

take one hundred copies at one dollar and twelve and a half cents for each page in one of the copies, and twenty-five additional copies at sixty cents for each page in one of these. But if this was not the meaning of the language as it appears upon the face of the contract, it was shown that, according to the usage of printers, this is the proper meaning to attach to it. The court admitted evidence to this effect, and this action is assigned as error.

It is now well settled that custom may control and vary the meaning of words, giving even to such words as those of number a sense entirely different from that which they commonly bear, and which, indeed, by the rules of language and in ordinary cases, would be expressed by another word. (2 Parsons on Contracts, 537; Smith v. Wilson, 3 B. & Ald., 728; Hinton v. Locke, 5 Hill, 437; Sontin v. Killerman, 18 Mo., 502.) In the first case cited, when the contract by the lessee was to lease ten thousand rabbits or a warren, it was held that parol evidence was admissible to show that by the custom of the country when the lease was made, the word "thousand" as applied to rabbit denoted one hundred dozen or twelve hundred. In the second case a day was shown by custom to mean ten hours, though in ordinary acceptation it meant twenty-four. A man that worked twelve hours and one-half was allowed to charge for one day and one-fourth. In the third a contract to deliver four thousand shingles was held to be filled by the delivering of twenty-five hundred in four bundles of a certain size, it having been found that the usage of the lumber trade was to regard a package of shingles of certain dimensions as containing one thousand shingles without reference to the number actually contained within it. The law seems to be that when there is nothing in the agreement to exclude the inference the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates; and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties. (Hinton v. Locke, supra.) This view is adopted by eminent text writers, and seems not to be disputed by any decision to which we have been referred. (Sanson on Usages and Customs; Browne on Usages and Customs, 30; Lawson on Usages and Customs, page 367 et seq.; Wharton on Evidence, sections 960 and 961a.)

The evidence is admitted in some courts on the ground that the case is that of a latent ambiguity which may be explained

by parol testimony. (Avery v. Stewart, 2 Conn., 69.) Here there was nothing in the evidence inconsistent with the language itself; or if so, and the language is to receive the literal construction claimed by Dwyer, the contract is such a one as no sane person would have entered into. The parol proof rendered it reasonable and fair, and such is the construction that contracts should receive when it does no violence to their terms.

We think the proof was properly admitted. The explanation given by this evidence was confirmed by the further proof that Pressly, the original contractor, so understood his agreement with the city of Brenham, presenting his bill prepared under the construction given to it by the usage of printers, and receives a payment upon the bill as thus made out. It is also otherwise shown that the understanding of all parties to the contract was in accordance with what usage and custom gave to it. When the custom was fully proved, and not in any manner contradicted, we think that no harm could arise from strengthening the introduction of the constructive evidence to show that it was in accordance with the intention of the parties.

It may be added that if the contract were such as the plaintiff claims it to be, he should not hesitate to hold it so unconscionable, and beyond all reason that the corporation had no right to bind itself for its performance, and we would refuse to enforce it. We think, however, that there was enough on the face of the contract to render its construction sufficiently maintained to authorize the plaintiff to bring the suit in the district court, without attempting a fraud upon its jurisdiction.

The plaintiff may have been honestly mistaken as to the amount he was entitled to recover under the contract, and may have supposed that he was entitled to the full amount which would have been due him upon his construction of the instrument, though his assignor had been willing to settle upon an interpretation which would have given him less than five hundred dollars. In a similar case when the mistake, though of law, seemed to be honest, this court held that the allegations of the petition, and not the amount which the party was entitled to recover, determined the jurisdiction. (Tidball v. Eichoff, 66 Texas, 58.) We see no reason to doubt the correctness of that decision, and, holding that the court below was correct in all its rulings, the judgment is affirmed.

*Affirmed.*

Opinion delivered February 14, 1888.