### BARREDA et al. v. MILMO NAT. BANK.
### (No. 6678.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 1, 1922. Rehearing Denied May 3, 1922.)

**1. Customs and usages 5—Custom of paying time deposits of Mexican money in Mexican bank bills held admissible in action to recover American money.**

In an action against a bank to recover a deposit of Mexican money, the prayer being for silver money or its equivalent in American money, defendant was properly permitted to introduce evidence of a general course of dealing between bankers and depositors in the locality wherein time deposits of Mexican money were paid in Mexican bank bills rather than in current funds of the United States.

**2. Customs and usages 10—Office of custom or usage.**

The chief office of custom or usage is to arrive at and determine the intention of the parties in connection with matters on which the contract is not clear and explicit.

**3. Customs and usages 1—"Usage" comprehends habits and course of dealing.**

"Usage" comprehends the habits, modes, and course of dealing generally observed either in any particular trade or in all mercantile transactions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Usage.]

**4. Customs and usages 3—Usage must be established, known, reasonable, and legal.**

A usage must be established, known, reasonable, and in consonance with law.

**5. Appeal and error 931(6)—Presumed that trial judge regarded competent testimony only.**

Where there was no jury, the presumption prevails that the trial judge gave weight to legal testimony alone in rendering his judgment.

On Motion for Rehearing.

**6. Customs and usages 19(3)—Evidence held sufficient to establish custom of treating Mexican paper money as commodity.**

In an action against a bank to recover a deposit of Mexican money in Mexican silver

dollars or their equivalent in American money, evidence *held* sufficient to establish a custom and usage whereby Mexican paper money was treated as a commodity, and deposits of paper money always paid in paper.

**7. Customs and usages ⊕⇒19(3)—Evidence held sufficient to show knowledge of custom of banks to treat Mexican paper money as commodity.**

In action against bank to recover deposit of Mexican paper money in silver dollars or their equivalent in American money, evidence *held* sufficient to sustain a finding that plaintiff had knowledge of a custom of banks and depositors in treating Mexican paper money as a commodity and always repaying deposits thereof in paper.

**8. Evidence ⊕⇒11—Not judicially known that no Mexican bank notes existed at certain time.**

It is not judicially known that there were no Mexican bank notes before 1902.

**9. Customs and usages ⊕⇒12(2)—Depositor bound by customs and usages of which ignorant.**

The known customs of banks and their ordinary modes of transacting business must be understood as having governed a bank and a depositor, though the depositor had no actual notice of them.

**10. Banks and banking ⊕⇒153—Deposit of American money general deposit, but deposit of foreign money special deposit.**

If a deposit of American money is made in a bank, ordinarily it must be taken as a general deposit creating the relation of debtor and creditor, but, if the deposit is of foreign money, the presumption that it was a general deposit cannot be indulged, and an express understanding to that effect must be shown.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by Porfiria G. de Barreda and husband against the Milmo National Bank. Judgment for defendant, and plaintiffs appeal. Affirmed.

N. A. Rector, of Austin, for appellant.
Dodson & Smith, of Laredo, for appellee.

FLY, C. J. This suit was instituted by Porfiria G. de Barreda, joined by her husband, C. Barreda, against the Milmo National Bank, alleging that many years ago Porfirira G. de Barreda had deposited, out of her separate funds and estate, 16,000 Mexican silver dollars in said bank, and had received a certificate of deposit therefor, and the same was renewed from time to time; that on March 7, 1911, the bank had given her a certificate of deposit of the sum named, reciting that it was Mexican dollars, payable to her order in current funds six months after date, with 5 per cent. interest if left for six months or longer on deposit in said bank. Refusal of payment was alleged, and in another count it was pleaded that, if Mrs. Barreda was not entitled to recover the full sum of $16,000 in current money of the United States of America, then she was entitled to recover the sum of 50 cents on the dollar of said sum, which was the value of the Mexican silver dollars when the certificate of deposit in 1911 was given, and they had been worth that ever since that sum was first deposited. It was also alleged that no interest had been paid on the deposit since January 1, 1918, wherefore appellants sought to recover $8,000 in current funds of the United States, with interest thereon at 6 per cent. per annum from January 7, 1918.

It was answered by appellee that when the certificate of deposit sued on was issued and ever since the money had been on deposit the custom prevailed that certificates of deposit for "Mexican money" or "Mexican dollars" meant the same bank notes and currency which were acceptable as Mexican current funds, and which was the only Mexican money generally in circulation at Laredo, Tex., and which was the kind of Mexican money deposited with appellee. That the certificates of deposit given from time to time were accepted in full contemplation of the usage and custom and with the implied agreement that such certificate would be discharged in Mexican currency and bank notes at nominal or face value and a tender in that currency was pleaded.

The cause was submitted to the court, no jury being demanded, and judgment was rendered that the tender made by appellee and the money deposited in court in Mexican bank notes in the sum of $18,782.00 and Mexican coin of the value of 21 cents was in full satisfaction of the debt, and that appellee recover all costs in the cause expended.

The evidence justifies the conclusion that Mexican money in Laredo is treated by the banks as a commodity, and separate accounts are kept by banks for American and Mexican money. The money in question was Mexican bank bills, and was kept among the Mexican accounts. Interest on the deposit was paid in Mexican bank bills, and no complaint was made about this by Mrs. Barreda until 1920, when the bills had greatly depreciated in value. Mrs. Barreda admitted having two accounts in the bank, one in American and the other in Mexican money. The only Mexican current funds in Laredo were Mexican paper money. It was the well-known custom to pay all Mexican deposit accounts in Mexican bank bills. Other necessary facts will be found in the course of this opinion.

The first assignment of error is that the court erred in overruling appellants' excep-

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tion to that part of appellee's answer which sets up a usage and custom in Laredo as to the payment of time deposits in Mexican bank bills rather than in current funds of the United States, and in all the other assignments from the first to the, ninth, inclusive, the attack is upon the allegations and proof of the custom and usage of banks in Laredo as to deposits in Mexican money.

[1, 2] This was a transaction between a bank and a depositor, and proof of a general course of dealing as between bankers and depositors in the city, town, or locality where the deposit was made would be admissible. The chief office of custom or usage is to arrive at and determine the intention of the parties in connection with matters on which the contract is not clear and explicit. Harrell v. Zimpleman, 66 Tex. 292, 17 S. W. 478. In that case it was a custom among land agents that was sustained.

[3, 4] Usage comprehends, the habits modes, and course of dealing generally observed either in any particular trade or in all mercantile transactions. A usage must of course be established, known, and reasonable, and must be in consonance with law. Ins. Co. v. Reymershoffer, 56 Tex. 234; Williams v. Arnis, 30 Tex. 38. In the last case cited it was said:

"That 'current funds,' in which the note is made payable, does not mean specie, but the representative of it, appears to admit of but little doubt; and what species of 'current funds' it was intended by the parties it should be paid in is left uncertain, and is open to explanation by verbal evidence and the determination of the jury."

See, also, Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104, and Dwyer v. City of Brenham, 70 Tex. 30, 7 S. W. 598.

The evidence was sufficient to show that the custom or usage prevailed among the bankers of Laredo that Mexican dollars were a commodity, not money, and when placed on deposit it was the general custom that it should be paid in Mexican bank bills. That was substantially the only Mexican money that circulated in Laredo. It was proved that, if the certificate of deposit given by appellee had been presented at any Laredo bank, it would have been paid, in Mexican paper money, which was the only current Mexican funds. All the facts and circumstances charge Mrs. Barreda with knowledge of the prevailing custom. It seems preposterous that any bank, knowing the unsettled condition of affairs in Mexico, where revolutions were as regular as seed time and harvest, would take Mexican money of any kind or character, with a guaranty that it should at all times be worth as much in the money of the American realm as it was when deposited. Such a guaranty would indicate phenomenal nerve, but little discretion and weak business sense. The assignments of error from 1 to 9, inclusive, are overruled.

The evidence shows that the dollars deposited by Mrs. Barreda were not in fact and truth money, but a commodity varying and fluctuating in value as often and as disastrously as the price of cotton or wheat. They had no fixed value, as have the dollars minted and circulated by the United States of America, and reason would refute the proposition that a bank that desired to retain its credit and perpetuate its existence would guarantee the price of a commodity that is up and down as are waters of the sea. It is a striking coincidence that the thought of such guaranty never seemed to find a lodgment in the mind of Mrs. Barreda until paralysis struck Mexican bank bills. Prior to that time she had been accepting them in payment of interest, as though they had been "so nominated in the bond." She placed Mexican bank bills in the appellee bank, and the certificate of deposit does not indicate that they were to be returned in American money, but in the same commodity which was deposited. It is not an attempt upon the part of appellee to give appellants, as they claim, a stone when they had asked for bread, but the action of the bank merely evidenced a desire not to return American silver or gold when something not as enduring as stone had been left in the bank.

Through the terms of the certificate of deposit appellee on March 7, 1911, certified that Mrs. Barreda had deposited 16,000 Mexican dollars, which would be repaid to her six months after date, in current funds, with interest at 5 per cent. per annum if left six months or longer in the bank. The uncontradicted evidence showed that the invariable custom was to repay in kind; that Mexican dollars meant Mexican bank bills, which were the only current funds in Mexican money. There is not a particle of evidence tending to show that there was any agreement to return the deposit in American money at the rate of 50 cents on the dollar or in Mexican silver. Mrs. Barreda made no such claim. There was no promise to pay in Mexican silver dollars, nor any other kind of metal dollars, but to pay in kind. The case of Thorington v. Smith, 8 Wall. (75 U. S.) 1–14, 19 L. Ed. 361, cited by appellants, sustains the theory that evidence was admissible to show what was meant by the word "dollar" as used in the connection it was used. The tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error are overruled.

[5] Neither the assignment of error numbered 15 nor the proposition thereunder is sustained by the bill of exceptions upon which they purport to rest. The bill of exceptions shows that Manuel Vizcaya Sierra had been a merchant in Laredo for 13 years, and had handled Mexican accounts with the

bank from 1907 to 1914, and that when he wrote checks on the Mexican account in the bank he designated Mexican on the check and generally got Mexican paper money, that he had now a Mexican deposit in the Milmo National Bank, and that when he was dealing in Mexican money all this Mexican currency was treated alike, all taken at its face value, and, based on his experience and the custom on the Mexican accounts in Laredo, that, if he should write a check to-day for $1,000 Mexican money on the Mexican account, he thought they would not pay him in silver. The objections to it were that it was a checking and not a time deposit account, that it did not show proof of custom in Laredo as to time deposits, and that it was incompetent for the witness to give an opinion as to what would be paid on his check. The objections would be worth nothing if there had been a jury, and certainly they cannot be entertained where the cause was tried by the judge, and the presumption prevails that he gave weight to legal testimony alone, of which there was amply sufficient, in rendering his judgment. The same ruling is applicable to the evidence to which objections are urged in assignments 16 to 21, inclusive.

The evidence demonstrated that the custom among the banks of Laredo was to place their dealings in Mexican money upon a different footing from those connected with the stable finances of the American government, and that custom must have been known to Mrs. Barreda, for, when acted upon in regard to the interest arising from her time deposit, she at no time complained until after the finances of Mexico had been wrecked upon the breakers of disturbance and revolution. She does not in her evidence state that she had placed silver on deposit with appellee, nor that she had any contract for a repayment to her in the coin or currency of America or the silver or gold of Mexico. The judgment is affirmed.

### On Motion for Rehearing.

This case being one of great importance, we granted a rehearing in order that it might be more fully argued. It has been submitted for the second time on added authorities and oral argument, and we have entered into a thorough review of the testimony as embodied in the statement of facts, and the law appertaining thereto. We give a full résumé of the pertinent facts and again enunciate our views thereon.

The money was held under the following renewal certificate of deposit, given by appellee to appellant:

"Daniel Milmo, President. Miles T. Cogley, Vice President, John W. Mussett, Cashier. The Milmo National Bank of Laredo. No. 2516. Mexican. Laredo, Texas, March 7th, 1911. $16,000.00. Porfiria G. de Barreda has de-posited in this bank sixteen thousand & no/100 Mexican dollars payable to the order of herself in current funds six months after date on the return of this certificate properly indorsed, with interest at the rate of five per cent. per annum if left six months or longer.

"Albert Martin, A. Cashier."

Perforated: "$16,000."

Indorsed: "Certificate of deposit not subject to check."

Mrs. Barreda testified that the money had been inherited by her from an aunt, and that it had been in the bank for many years. The aunt died on December 2, 1907, and before that time there were $22,000 in the bank, but $6,000 had been drawn out. In March, 1911, the sum of $16,000 was on deposit. The deposit was in Mexican money, and the interest was paid in Mexican bank notes or currency. The money was kept by the bank in a Mexican deposit account, and she said she wrote checks against the account for Mexican money, and the bank paid, in 1911 and 1912, either in Mexican paper money or silver. She swore, however, that she only got Mexican currency or paper money after 1914 for the interest due her. Since that time, she admitted, the bank refused to pay her anything but paper money. She stated:

"In all the years that I checked on my Mexican account in the Milmo National Bank, which was made up in part from interest credits of this certificate of deposit, I never made any question between paper and silver. I would have them any way I wanted them, silver or currency."

It was proved that at the time the certificate of deposit was given Mexican silver dollars had not been in circulation, and that the only current funds for Mexican money was Mexican paper money. It was also in proof that there was in circulation nothing but Mexican paper. The Mexican word "pesos" meant Mexican paper dollars, and, if silver had been intended, the words used would have been "pesos fuertes," or, in English, "silver dollars." If gold had been intended, the words, "pesos oro nacional," or, in English, "gold dollars," would have been used.

R. K. Mims, a banker, swore that never prior to 1914 did a bank customer claim that a bank was responsible to him for his Mexican paper money as of value at the date he put it in the bank. The same witness swore:

"This Mexican money that was circulated here generally, Mexican currency and bank bills, obligations of banks in Mexico, was treated in this country and at Laredo during the time that these Mexican accounts were alive here as a commodity. They had a daily market quotation, just like wheat and cattle and other things. During the years that these Mexican accounts were handled here, and particularly about 1911 and 1912, under the custom that existed in Laredo, if this certificate of deposit which you now hand me and say is the

one sued on in this case had been presented to me as a banker for purchase or for me to collect for the holder of it this amount from the Milmo National Bank, in view of the existing conditions and general custom, I would have expected to have received from the Milmo National Bank in return for that obligation $16,000 in Mexican bank notes. In view of the general custom existing at that time among people who handled that Mexican paper and Mexican money, I would not have expected that the Milmo National Bank would pay me $16,000 silver dollars. Nor would I, in view of the custom, have expected that they would pay me in American money what $16,000 in Mexican paper money was worth the date that certificate was dated."

The record fails to disclose that any one, except appellants, ever had any expectation that such certificates should be paid in Mexican silver or its value in American money. The evidence of Mims was corroborated by all of the witnesses. Mrs. Barreda never made any complaint about her certificate of deposit nor the depreciated money in which the interest was paid. She did not demand silver until she, in company with her attorney, demanded silver in October, 1920. At that time appellee offered to pay in Mexican bank bills, which had been held in the vaults of the bank to pay off her claim. No silver was ever paid her as interest, but the interest was paid in Mexican bank bills.

[6] It was shown that it was the general custom to do business with Mexican money absolutely separate from the business in American money, and Mrs. Barreda admitted that she had two accounts, one in Mexican and one in American money. The money deposited by Mrs. Barreda and now sued for by her was on the Mexican account. There was no Mexican silver in circulation in Laredo in 1911, nor at any time thereafter. Therefore Mexican silver had nothing to do with the account. The deposit was made necessarily in Mexican bank bills, as that was the only Mexican money circulated or traded in in Laredo. The testimony of Farias showed that bank bills were deposited, and Mrs. Barreda did not swear that she deposited any other kind of Mexican money, and never claimed that she was entitled to any other kind of money until she had employed an attorney. Mrs. Barreda did not claim that there had ever been any promise, outside the certificate of deposit, to pay her silver, but that her claim was based on the certificate alone, and on nothing that any one connected with the bank told her.

[7] The accounts for Mexican money were kept separately from the accounts for American money. When a loan was made in Mexican money, it was noted on the Mexican account. The transactions in the two currencies were kept as fully separate as though kept by separate banks. The bank bills kept to pay Mrs. Barreda have been in the bank since 1913, and have not been loaned since

that time. She knew the custom in regard to Mexican money and knew that it was from 1914 at least steadily decreasing in value. Yet she entered no protest and took no action to convert the unstable and uncertain currency of an unstable and uncertain government into the money of a nation in which she was residing, which was as permanent and solid as anything created by human agencies can be. She knew by actual notice in 1914, as she impliedly knew before that time, that the bank had received Mexican paper from her and intended to pay her in the same character of paper. She uttered no word of protest and made no claim that she should be repaid in Mexican silver or American money. For four years she made no claim for any other than Mexican bank bills, and justice and equity would estop her from claiming Mexican silver or American money after acquiescing for at least four years, while the paper was steadily declining in value. She is estopped from setting up the claim she does, after, by her silence and acquiescence for years, causing appellee to hold the money. If there are equities to be adjusted, the evidence turns the scales in favor of appellee.

[8] In the face of the evidence that showed that only Mexican bank bills were in circulation at the time of the deposit, and the evidence of Farias that he told Mrs. Barreda in 1914 that the certificate was for bills and that he testified:

"I know of my own knowledge what kind of money was deposited in the Milmo National Bank originally from which this certificate of deposit grew"

—it is asserted in the written argument:

"There is not one word in the record either pro or con as to the nature of the deposit represented by the certificate sued upon."

Not only that testimony, but bankers of Laredo swore that the certificate marked "Mexican" clearly indicated the kind of money deposited and that it was Mexican bank notes. This court does not know judicially or otherwise that there were no Mexican bank notes to be deposited when this money was deposited, but, on the other hand, we are convinced that such bills were in existence. The assertion "that there were no Mexican bank bills more than 20 years ago" is not warranted by anything in the record.

The note mentioned in the case of Hogue v. Williamson, 85 Tex. 553, 22 S. W. 580, 20 L. R. A. 481, 34 Am. St. Rep. 823, was executed in Mexico and was for "1,000 Mexican silver dollars," and the Supreme Court held that the value of the Mexican money could be collected in Texas. That decision, however, is not authority for the assertion that Mexican bank bills were not a commodity in Texas, which was fully recognized in business circles in Laredo and acted on in that

capacity. A large portion of the argument of appellants is based on the premise that a custom or usage in business is not permissible to show and explain the business relations of the parties, and throw light on their intention in the execution of a written instrument. The basis of the contention is that the certificate established liability in Mexican or American silver. Although it is argued that the certificate infallibly established the liability of appellee, appellant, in her evidence, was in such doubt as to what the certificate established that she said she "understood she was to be repaid the amount of $16,000 in either Mexican silver dollars or American money." The certificate surely needed explanation if the owner of it was ignorant as to whether it was given for Mexican or American silver dollars.

[9] Notwithstanding the claim that some law is being varied by proof of the circumstances surrounding the parties when the contract was made, and that such law could not be varied by custom, this court is of the opinion that the evidence of custom did not seek to vary any law. The evidence was admitted to establish the true contract by showing the intention of the parties to it. That the proof of the custom is justified and fully recognized by respectable courts is shown in the decision in Fowler v. Brantly, 14 Pet. 318, 10 L. Ed. 473, cited by appellant in her brief. The Supreme Court of the United States said:

"The known customs of the bank, and its ordinary modes of transacting business, including the prescribed forms of notes offered for discount, were matters of proof, and entered into the contract; and the parties to it must be understood as having governed themselves by such customs and modes of doing business; and this whether they had actual knowledge of them, or not. * * *"

That rule is as well established as any known to the law, and ought not now to be subjected to attack or ignored altogether. A course of dealing between a bank and a single person may be shown to throw light on a transaction, and the general usage of all or a majority of the banks in a place, town, city or county is held to be known to all in the particular community and even others dwelling elsewhere. Morse on Banking, §§ 9 and 309a, and numerous authorities cited in footnotes; Bank of Washington v. Triplett, 1 Pet. 25, 7 L. Ed. 37.

[10] Appellants seek to treat the deposit as governed by the rules in regard to deposits made in the money of the realm, and claim that it was a general deposit and created the relation of debtor and creditor between the bank and depositor. This cannot be legally done under the facts of this case. The deposit was in Mexican currency, and the same rules do not apply as in case of American money. If a deposit of American money is made, ordinarily it must be taken as a general deposit creating the relation of debtor and creditor, but if the deposit of foreign money is made the presumption that it was a general deposit cannot be indulged, but an express understanding to that effect must be shown.

"In short, foreign coin is, in the United States, so far in the nature of a commodity that it cannot pass to or from a banker as money unless by force of an agreement between the parties, express or to be implied from their usual course of dealing together." Morse, Banks and Banking, § 184, p. 415.

The case of Marine Bank v. Fulton County Bank, 69 U. S. (2 Wall.) 252, L. Ed. 785, does not apply to the facts of the present case. In that case the Marine Bank collected for the Fulton County Bank two notes in certain Illinois currency which was from 5 to 10 per cent. below par, and used the money in its ordinary business. The next year the collecting bank sought to pay to the other bank Illinois currency which was then worth less than 50 cents on the dollar. The money collected was legal money in Illinois, and the collector used it as its own in its business. There was no agreement or custom in regard to the funds, but they were American money and were used by appellant, after being credited as American money by the collector. The debts were collected by the Marine Bank in a depreciated currency without the knowledge or consent of the Fulton County Bank, and placed to its credit as American money. There is no doubt, as held by the Supreme Court, that when a general deposit is made in the money of the country, the relation of debtor and creditor is at once created, but this is not true of foreign currency taken as a commodity.

The case of Planters' Bank v. Union Bank, 83 U. S. (16 Wall.) 483, 21 L. Ed. 481, is more nearly like the present case. In that case one bank had collected Confederate money for another with the knowledge and consent of the owner of the paper. The collecting bank was sued for the money, and on the trial they asked for an instruction that, if Confederate money was collected and used by the bank in its business, it became a debtor of the depositor, and it was entitled to recover the value of the Confederate money at the time it was collected. The refusal to give the charge was the cause of complaint on appeal. After recognizing the general rule as to the creation of the relation of debtor and creditor by a bank collecting money and using it in its business, the court held:

"But it is to be observed this is the rule where money has been deposited or collected, and when there has been no contract or understanding that a different rule should prevail. * * * The subject of the contract was a commodity, not money, and there was no default in the Union Bank until a demand was made and refused."

The court drew the distinction between the case under its consideration and the Marine Bank v. Fulton County Bank Case, holding that the collection in the latter was in money, in the former was not, and concluded:

"We hold, therefore, that the Planters' Bank ought not to be permitted to recover more than the damages sustained by it in consequence of the defendant's failure to deliver Confederate notes when they were demanded, and those damages are measured by the value of those notes in United States currency at the time when the demand was made and when the notes should have been delivered."

That decision is sound and covers this case in every material point. The Mexican money in circulation in Laredo which was deposited in 1911, was no more money than the money of the Confederacy, and, if appellee had refused to deliver the same when it was demanded, it would have been liable only for its value at that time.

The case of Russek v. Angulo (Tex. Civ. App.) 236 S. W. 131, has no applicability to the facts of this case. It merely enunciates the rule that has never been denied that, when the money of a country is deposited in a bank of the same country without making a special deposit of it, it becomes a general deposit, and the relation of debtor and creditor is created between the bank and the depositor. No question as to the soundness of that rule is raised in this case. No one questions the rule as to proof of custom or usage laid down in Oxford v. Rogers (Tex. Civ. App.) 238 S. W. 295.

Appellee offered to pay appellant the full amount of her deposit in Mexican bank bills or 25 cents in American money for each dollar of the bank bills. She declined either proposition and raises no objection to the judgment on the ground that it should have been for the equivalent of the bank bills in American money at the time of the tender.

We wish to reiterate that, when a check or money is taken to a bank and deposited, ipso facto the relation of creditor and debtor is created between the depositor and the bank, but when a commodity, such as foreign bank bills which have not been recognized nor are current in business as money, then the relation of creditor and debtor does not arise simply by reason of the deposit, but the relation between the parties will depend upon the contract between them. The facts and circumstances in this case show a contract to receive Mexican bank bills and to repay in such bills. The United States government has decreed that no foreign gold or silver coins shall be a legal tender in payment of debts. Barnes' Fed. Code, § 5846 (Comp. St. § 6571). The existence of foreign paper money has met with no recognition in the laws of America. The value of foreign coins is fixed by law, and it is provided that gold and silver coins shall be receivable at the treasury of the United States at the rates fixed by law and shall not be reissued, but coined anew. Barnes' Fed. Code, §§ 5816 and 5818 (Comp. St. §§ 6536, 6538). In no statute brought to our knowledge has foreign money been given the character of money. It is provided in section 5816 that the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value. The value of the pound sterling of Great Britain was fixed by section 5817 (Comp. St. § 6537) in 1873, but that was repealed in 1921. Under the laws of the United States, the Mexican currency deposited in the Milmo National Bank was not money, and in the provision requiring foreign gold and silver coins to be coined anew the government treats even foreign coin as a commodity. Foreign bills, which are not recognized in any way by American law, must perforce be treated as a commodity, and no amount of argument can convert them into money. It would take a positive agreement between the contracting parties to convert such currency into money. No such contract appears in this case. The contract evidenced by the certificate proclaimed on its face that it was not given for dollars, but for Mexican dollars, which were a commodity, even if in silver or gold, worth only the amount of pure silver or pure gold in them. The usage or custom of the country will fix the manner of treatment of such commodity. It is strenuously contended that "current funds," used in the certificate of deposit, meant the value in American money of the Mexican money deposited in the bank at the time the money was deposited. However, Chief Justice Hemphill, in Fleming v. Nall, 1 Tex. 246, holds:

"A contract, for the payment of a sum in bank notes, or other paper currency may or may not be, equivalent to that sum in specie. The extent of the obligation depends on the meaning which usage affixes to the terms at the time the contract was made or is expounded. Usage gives force and effect to language; and as terms are generally understood in the ordinary transactions of life, so should they be construed by courts of justice."

That would seem to countenance and sustain proof of the usage of a community as throwing light upon a contract. Again, in the case of Williams v. Arnis, 30 Tex. 37, in a decision by a Supreme Court composed of George F. Moore, Richard Coke, S. P. Donley, Asa H. Willie, and George W. Smith, all distinguished lawyers, it was held, in regard to a promissory note dated January 1, 1865, and payable in "current funds":

"That 'current funds,' in which the note is made payable, does not mean specie, but the representative of it, appears to admit of but little doubt," and what species of 'current funds' it was intended by the parties it should be paid in is left uncertain, and is open to ex-

planation by verbal evidence and the determination of the jury. * * * The terms 'bank notes,' 'current bank notes,' and 'current funds,' when used in notes and obligations, import generally, in their signification, such as are convertible into gold and silver at par. * * * And such would be the construction, prima facie, of such terms, until the contrary be shown by the party contesting it."

That was said about a note given for money, and not for foreign bank bills, and yet it is contended that appellee had no right to show by the facts and circumstances surrounding the transaction what was meant by "current funds." As said in that case:

"Such contracts will be construed according to usage of the community, as the best evidence of the intention of the parties."

There can be no doubt about the soundness of that proposition.

No reason has been offered that would cause this court to recede from its former opinion, and it will be adhered to.

The order granting a rehearing was merely to permit further argument, and it is set aside, and the motion for rehearing is overruled.