## International Salt Company, Appellee, v. Robert G. Tennant, Appellant.

### Gen. No. 14,019.

1. INSURANCE—*what does not operate as an ipso facto cancelation of a Lloyd's policy.* Held, that the Lloyd's policy involved in this suit, the going into effect of which was dependent upon the existence of another policy of insurance, did not *ipso facto* terminate upon the cancelation of such collateral policy.

2. CONTRACTS—*when custom binding; when not.* A custom to bind a party to a contract must be known to the party sought to be bound or be so universally established as to be presumed to be within the knowledge of such party.

3. INSURANCE—*when proof of notice waived.* Proof of notice of a fire within the time allowed by the policy, held waived by the placing of the defense on another ground in the court below.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed October 8, 1908.

WILLIAM E. CLOYES, for appellant.

ROBERT S. ILES and ROBERT D. MARTIN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The judgment appealed from in this case was for $144.06, and was rendered by the Circuit Court sitting without a jury and trying *de novo* an appeal from a justice of the peace in Cook county. Before the justice the plaintiff, the International Salt Company, had recovered a judgment against the defendant, Robert G. Tennant, for $125.28, and the judgment in the Circuit Court was for the same amount with interest added for the interval between the trials. It is assigned here as error that the judgment was against the law and the evidence, and that the court received improper evidence and excluded proper evidence at the hearing.

The suit was upon a so-called "Lloyd's" insurance policy, which was produced in evidence, in and by which the defendant, Robert G. Tennant, with nine other persons, under the name of "Tennant's Fire Underwriters," in consideration of a premium of $46.50, bound themselves to pay to the said International Salt Company of Illinois, all loss or damage by fire between November 17, 1902, and November 17, 1903, on merchandise belonging to or in possession of said company in South Chicago, to the amount of $2,500, within sixty days after such loss was proved. But the liability of any one of the ten underwriters was not to exceed his proportionate part of the entire liability resting on the ten; that is, each underwriter insured for $250; nor in case of partial loss was the liability of any underwriter to exceed a sum which should bear the same proportion to the amount of loss recoverable under the policy as the amount of such underwriter's subscription should bear to $2,500.

The following provisions are in the policy:

"This policy is issued on the representation and with the warranty by the assured that the Phoenix Insurance Company of New York have a policy or policies in force on the identical property described herein during the existence of this policy to the amount of at least $50,000, in form concurrent herewith on the identical subject-matter, and in identically the same proportion on each separate part thereof.

"It is hereby further warranted and is a condition on which this insurance is based, that this policy is subject to all the clauses, conditions, rates and proportions, and will follow identically the same adjustment and settlement of any loss that may be sustained under this policy, as that made on policy or policies above issued by the Phoenix Insurance Company of New York.

"This policy can be canceled at any time at request of insured by surrender of policy to Robert G. Tennant, attorney, said Robert G. Tennant retaining for the underwriters the customary short rate, or policy

may be canceled by the said Robert G. Tennant, attorney, or either of the underwriters hereto by giving five days' notice of such cancelation to the insured, and surrendering to the insured the unearned portion of the premium actually paid to said Robert G. Tennant. This policy is made and accepted, subject to the foregoing stipulations and conditions, together with such other provisions or agreements or conditions as may be endorsed hereon or added hereto, and no one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions, no one shall have power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached."

There was a policy covering the same property issued by the Phoenix Insurance Company on May 15, 1902, and running from the 24th day of May, 1902, to May 24, 1903, in existence at the time that the Tennant policy was issued on November 18, 1902, and the Tennant Underwriters made no separate investigation of the risk, but issued their policy, as was their custom, on the faith of the previous issue of the Phoenix policy. The Phoenix policy contained, however, the usual provision that it might be canceled at any time by the company on giving five days notice of such cancelation, and on April 20, 1903, the Phoenix Company gave notice of cancelation to the firm of Moore, James, Lyman & Herrick, who were the insurance agents who placed the order of the International Salt Co. for insurance both with the Phoenix Company and the Tennant Underwriters. Mr. Moore of that firm testified:

"We as insurance agents representing a number of insurance companies, receive orders from people desiring insurance. We undertake to fill their orders

for insurance—that is, as far as we are agents for them.''

The custom, he said, was to send cancelation notices to the agents who placed the insurance.

Moore, James, Lyman & Herrick received the cancelation notice of the Phoenix policy, which was given as of April 20, 1903, and purported to effect the cancelation of the policy on April 25th. The International Salt Company, unless the knowledge of Moore, James, Lyman & Herrick was its knowledge, did not know of the cancelation of the Phoenix policy on April 28th. On that day a fire occurred which damaged to the extent of $71,534.82 the insured property, which was covered by policies (excluding the Phoenix policy) aggregating $142,750.

Mr. Moore testified: ''We, as a matter of fact, knew that the cancelation notice'' (of the Phoenix Company) ''had been served on the 20th. We had no authority to act for the International Salt Company in receiving that notice of cancelation, but in this case we told them we had accepted notice that the policy was canceled on the 25th, three days before the fire; consequently they gave up the policy at my request the morning after the fire.''

Proofs of loss, conceded to be in due form and adequate, and to be for the proper amount if the Tennant's policy was in force and the Phoenix policy was not, were under date of May 26, 1903, presented by Moore, James, Lyman & Herrick to the ''Tennant's Fire Underwriters'' through Mr. Tennant, who was their ''attorney in fact'' for this insurance business. They were returned by Mr. Tennant and payment refused on the ground that the Phoenix Company must sign them to show that it had adjusted the loss and paid their *pro rata* proportion of it, before the Tennant Underwriters would be liable for it. The amount claimed by the proofs of loss from the Tennant Underwriters was $1,252.80, for one-tenth of which each un-

derwriter was liable if the amount of the claim was due on the policy. On account of the refusal to pay, suit was brought against the defendant Tennant for $125.80 on September 14, 1903, before Justice Underwood, with the subsequent results before noted.

The defendant has argued in this court that as there was a provision in the Phoenix Insurance Company policy which must be considered as read into the Tennant policy, that "if fire occur, the insured shall give immediate notice of any loss thereby in writing to this company," and as no evidence was offered by the plaintiff showing any such notice prior to the execution of the proofs of loss twenty-eight days after the fire, the plaintiff cannot recover on the policy.

There is no merit in this contention. If we were willing to hold—which we are not—that failure to notify the insurer of a fire within twenty-eight days necessarily worked a forefeiture, it would be a matter of defense. There is no evidence here that the insurer was not notified "immediately;" the evidence which defendant must refer to in his argument from which he draws this inference is only that of Mr. Tennant that no *"proofs of loss"* except that marked plaintiff's exhibit 2 was ever tendered him—a very different thing.

For the proofs of loss sixty days were allowed; they were given in perfectly regular form within thirty. If proof of notice within some shorter time were otherwise necessary, the plaintiff was certainly excused from making it by the explicit placing of the defense, by the defendant himself and his counsel at the trial below, entirely on the absence of the Phoenix Insurance Company from the list of insurers in the proofs of loss, and on the demand that before settlement an adjustment should have been made by the Phoenix Company.

Giving the widest interpretation to this claim, it included only these two points: First, that the Tennant policy requiring an adjustment by the Phoenix

Company made, in the language of the defendant's argument, "the Phoenix Company an arbitrator or umpire between the appellee and the appellant and his associates;" and, second, that the cancelation of the Phoenix policy *ipso facto* canceled the Tennant policy. We do not think either position tenable.

The Tennant policy did read into itself the "clauses and conditions" of the Phoenix policy, and that policy provided a method of appraisement and adjustment in the event of a disagreement "as to the amount of the loss," "the insured and *this* company each selecting an appraiser," etc. Reading this into the Tennant policy, however, does not involve making the Phoenix Company an umpire. There was no disagreement "as to the amount of loss" shown, and if there were, the clause in the Tennant Policy would require the selection of an appraiser by the Tennant Underwriters, not by the Phoenix Company.

But there is a clause in the Tennant policy which provides that "this policy * * * will follow identically the same adjustment and settlement of any loss that may be sustained under this policy as that made on policy or policies above issued by the Phoenix Insurance Company;" and it is insisted that this made an adjustment by the Phoenix Company an indispensable condition of liability under the Tennant policy, and that therefore "upon the cancelation by the Phoenix Insurance Company of its policy it became impossible for the contract between appellant and appellee to be carried out according to its terms, and it therefore ceased." This is equivalent to saying that the existence of the Tennant policy was dependent on the synchronous coincident existence of a Phoenix policy, and that when the Phoenix policy ceased by its expiration or cancelation, the Tennant policy necessarily did the same. This is in fact the chief defense made in this case, and, as we view it, the only significant one. It is based not only on the clause we have last quoted, but also on the provision of the

policy that it "is issued on the representation and with the warranty by the assured that the Phoenix Insurance Company of New York have a policy or policies in force on the identical property described herein during the existence of this policy to the amount of at least $5,000, in form concurrent herewith, on the identical subject-matter, and in identically the same proportion on each separate part thereof."

The plaintiff's claim rests on the proposition that this only requires that at the time the Tennant policy was issued, and for an appreciable time thereafter ("during," that is, in the sense of "in the time of") a Phoenix policy should be in existence; the defendant's answer is based on a different interpretation of "during," which would make it mean "throughout the whole time of."

In consideration of the undoubted rule that the terms of an insurance policy must be construed most strongly in favor of the insured, and of the facts that a sufficient reason for the existence of the provision appears, if it is construed only as involving a substitute for a separate investigation of the risk by the insurers, who signify it by their willingness to rely on the investigation that must have been made by the Phoenix Company; that it would have been very easy, had that intention been present, by explicit words to have made the cancelation of the Phoenix policy terminate the Tennant policy; that the Phoenix policy, on which the Tennant policy was based (as might by inquiry have been learned by Mr. Tennant if he did not otherwise know it) expired by its own terms through lapse of time on May 24, 1903, while the Tennant policy ran to November 17, 1903, and was paid for until that time, and that the Tennant Underwriters expressly retained the power formally to cancel on five days notice their own policy (which they might have used, but did not use, when the Phoenix canceled its policy), we must hold that the plaintiff's and not the defendant's construction of the clause in

question is correct, and that the cancelation of the
Phoenix policy did not *ipso facto* terminate the Ten-
nant policy.

Nor do we think that the court erred in rejecting
the offer of defendant's counsel to prove by his client
"that there is a well known usage and custom in the
insurance world, under which   *   *   *   the cancela-
tion of the original insurance policy, the warranty
policy   *   *   *   —in this case the Phoenix policy—
operated as a cancelation and termination of this
contract of insurance on which this suit was brought,
and that that is a well known usage and custom in this
state."

This falls short of offering to prove a custom or
usage known to the insured, or so universal and estab-
lished as to be presumed to be within its knowledge,
which state of things alone, if the custom were other-
wise competent, would make it binding on the plaint-
iff, or read it into the contract between it and the de-
fendant.

But in any event, while custom may explain a con-
tract, it cannot make or break a contract, and we think
that here the construction of the policy must be de-
termined from the face of the instrument.

There is raised by the plaintiff a question whether
the Phoenix policy was itself validly canceled before
the fire.   We have assumed that it was, since the
plaintiff evidently ratified the action of the insurance
agents in accepting service of the necessary notice.
We are not deciding, however, that such service on the
agents was in itself sufficient; we have had occasion
to hold the other way in other cases and under other
circumstances.

The position of the defendant that the insurance
agents, Moore, James, Lyman & Herrick, bound the
plaintiff by receiving and retaining a payment for un-
earned premiums on the Tennant policy from April
20, 1903, to its stipulated termination in November,
and that thereby the claim for loss was waived, is

manifestly untenable. Mr. Moore's testimony shows the situation and is apparently confirmed by an inspection of the receipt—defendant's exhibit 1 in the record. According to a running account between Moore, James, Lyman & Herrick and the Tennant Underwriters, the former, long after the fire, sent a bill for unearned premiums on cancelled policies to the latter. It did *not* include an item for this policy. On receipt of the bill Mr. Tennant, or some one for him representing the Underwriters, added an item for the International Salt Company policy and two other items (the three items are in a different handwriting and in different ink), and sent a check for the aggregate amount. Moore, James, Lyman & Herrick, who had no authority to consent to any cancelation of the policy or accept return premiums or waive the claim on the policy, crossed out the "International Salt Co." item of $26.90, and tendered that amount back to Tennant, who refused, for the Underwriters, to accept it. There was nothing in this affecting the plaintiff's rights.

The judgment of the Circuit Court is affirmed.

*Affirmed.*