(147 App. Div. 810.)

BENEDICT et al. v. SECURITY INS. CO.

(Supreme Court, Appellate Division, First Department.    December 29, 1911.)

1. INSURANCE (§ 238*)—CANCELLATION OF POLICY—POWER OF AGENT.

   Where plaintiff engaged a Virginia insurance broker to place a certain amount of insurance upon property located in that state, knowing that it was the custom of insurance agents there to replace policies which were canceled, the broker, upon the cancellation of one of the policies which he had secured, had authority to replace it by securing another, and so had authority to consent to the cancellation.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 517; Dec. Dig. § 238.*]

2. INSURANCE (§ 145*)—RENEWALS.

   Where insurance brokers of Virginia, engaged by plaintiff to place insurance upon certain property, renewed a policy which had been canceled, and plaintiff ratified their act, plaintiff was entitled to recover on the renewal policy, for one may, even in his own name, insure the property of another for the benefit of the owner, and that insurance will, upon subsequent adoption, inure to the benefit of the owner.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276–291; Dec. Dig. § 145.*]

3. INSURANCE (§ 336*)—AVOIDANCE OF POLICY—OTHER INSURANCE.

   Where a nonresident insurance broker negotiated two policies, and upon receiving notice that one of them would be canceled negotiated another policy, which he expressly stated was to take the place of the canceled policy, the canceled policy became ineffective upon the negotiation of the second, and the second one was not invalid because it and the one canceled constituted more insurance than was represented to be upon the property.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 856–873; Dec. Dig. § 336.*]

4. TRIAL (§ 168*)—DIRECTED VERDICT.

   The court may in a proper case, where plaintiff's right to recover depends upon undisputed facts, direct a verdict.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 376–380; Dec. Dig. § 168.*]

Appeal from Trial Term, New York County.

Action by Seelye Benedict and others against the Security Insurance Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Geo. A. Strong, for appellants.
Frederick J. Moses, for respondent.

SCOTT, J.  The plaintiffs appeal from a judgment entered upon the verdict of a jury and from an order denying a motion for a new trial. The action is upon a policy of fire insurance. There is no substantial dispute as to the facts.

The plaintiffs were the insurance brokers for the National Wire Bound Box Company having entire charge of and full authority concerning the insurance business of that company. Among other duties,

in case of cancellation of policies they replaced the policies, or arranged for their replacement without specific instructions from the Box Company as to the companies with whom the insurance was to be placed. They now sue as assignees of the Box Company. In April, 1909, having occasion to place insurance to the amount of $5,475 for the Box Company, plaintiffs wrote to the firm of Goodrich, Dobie & Dell, insurance brokers of Norfolk, Va. (where the property to be insured was located), asking them to place the insurance. Mr. Dobie, one of the firm, accordingly took out two policies one for $2,975 in the Virginia Fire & Marine Insurance Company, and one for $2,500 in the Phœnix Insurance Company, and sent the policies to plaintiffs in New York. A few days later (just when does not appear) the agent of the Phœnix Company notified Mr. Dobie that his company wished to cancel its policy. Dobie therefore applied to Barry, Osborne & Co., defendant's Norfolk agents, for a policy to replace the Phœnix policy. It was testified to and not disputed that, when Dobie applied to Barry, Osborne & Co. for the insurance, he told them that the reason he wanted the policy was that one of the companies which had insured the property had ordered its risk canceled, and consequently that he was short $2,500 on the insurance. Barry, Osborne & Co. accepted the insurance on behalf of defendant, and on the same day, April 30, 1909, issued the policy which is the subject of this action. On the same day, Dobie sent the policy to plaintiffs, together with a letter stating that it was offered in place of the policy previously issued by the Phœnix Insurance Company, which plaintiffs were requested to return for cancellation. On that same night the insured property was destroyed by fire, and a notice thereof sent to plaintiffs, who must have received it at the same time, or very near the same time, that defendant's policy was received by them. Plaintiffs immediately wrote to Messrs. Barry, Osborne & Co., representing defendant, and Messrs. Goodrich, Dobie & Dell, making it quite clear that they claimed only $5,475 under all the policies, of which $2,975 was covered by the Virginia Company. As to whether the remaining $2,500 should be paid by the Phœnix Company or defendant, the plaintiffs did not then assume to decide, preferring to leave it to the companies to adjust the matter between themselves. Plaintiffs also caused the proper amount of premiums to be tendered to defendant which was refused. The Virginia Company having paid its proportion of the loss, and the Phœnix Company and defendant having both refused to pay, plaintiffs bring this suit.

Besides the formal denials designed to put plaintiffs to their proofs, the answer contains three separate defenses, to wit: (1) That there was a breach of the covenant as to the amount of insurance upon the property, in that there was already $5,475 of insurance upon the property when the defendant's policy was issued. (2) That there was a misrepresentation as to the amount of insurance upon the property at the time the defendant's policy was applied for. (3) That in applying for defendant's policy Mr. Dobie, plaintiffs' agent, intended to substitute defendant's policies for the Phœnix policy, but that he exceeded his authority in attempting to do so. The second defense was

clearly negatived by the evidence. Whatever may be the legal effect if the transactions between the parties, there was no misrepresentation, for defendant's agents were distinctly informed, when the policy was applied for, that it was wanted to replace a policy which was to be canceled.

[1, 2] As to Dobie's authority to substitute policies we think there can be no doubt, especially as his actions in that regard were subsequently ratified by plaintiffs. The plaintiffs' manager testified that he had written the initial letter to Goodrich, Dobie & Dell asking them to place the insurance to the extent of $5,475; that he then knew that under the custom of insurance agents in Virginia, under the authority given by that letter, the agents to whom it was addressed would attend to replacing, by policies in other companies, any policies which they had negotiated which might be canceled. This clearly implies that plaintiffs understood and agreed, when they authorized Mr. Dobie's firm to place the insurance, that they also authorized that firm to replace any policies that might be canceled. Further than this the plaintiffs were prompt to ratify, if ratification was necessary, Dobie's act in substituting defendant's policy for that of the Phœnix Company.

"It is laid down in broad terms that one may, even in his own name, insure the property of another for the benefit of the owner without his previous authority or sanction, and that it will inure to the benefit of the owner upon a subsequent adoption of it, *even after a loss has occurred.*" Waring v. Indemnity Ins. Co., 45 N. Y. 606–611, 6 Am. Rep. 146; Herkimer v. Rice, 27 N. Y. 163–179.

It is true that the Phœnix Company had not given the formal notice of cancellation provided for in the standard form of policy, but that is unimportant. If Dobie had authority to substitute and replace, he likewise had authority to consent to cancellation, and plaintiffs' acceptance of defendant's policy in substitution for that of the Phœnix Company indicated its acquiescence in the cancellation of the policy of the latter company. Defendant refers us to Hermann v. Niagara Fire Ins. Co., 100 N. Y. 412, 3 N. E. 341, 53 Am. Rep. 197, and Partridge v. Milwaukee M. Ins. Co., 13 App. Div. 519, 43 N. Y. Supp. 632, as authority for its contention that Dobie's authority was exhausted when he had originally placed the insurance, and that he had thereafter no authority to consent to a cancellation or to replace a policy which had been canceled. Neither of those cases fits the facts of the present case, because in both the assured repudiated the agent's authority. Here the assured has ratified and adopted the acts of the agent, and thus confirmed his authority to act.

[3] Having come to this conclusion, which seems irresistible, that Dobie had ample authority to consent to the cancellation of the Phœnix policy and the substitution therefor of defendant's policy, there is no difficulty in arriving at the further conclusion that the plaintiffs are entitled to recover. It is perfectly apparent that neither plaintiffs nor Dobie ever intended to carry more than $5,475 upon the property, in the aggregate, or ever considered or claimed that they were insured beyond that amount. It is equally clear that both Dobie and defendant's Norfolk agents knew, when the policy in suit was issued, that

it was intended to take the place of a policy for a like amount that was to be canceled. Dobie's act in taking out a policy from defendant was an acquiescence in the request of the Phœnix Company, that its policy should be canceled, which became effective the moment that defendant's policy was issued. From that moment the Phœnix policy ceased to be effective, and defendant's policy, which had been issued without condition, became effective. It consequently was effective when the fire occurred.

[4] Upon the evidence as it stood at the close of the case the court would have been justified in directing a judgment for the plaintiffs, since their right to recover depended upon undisputed facts, and the legal inferences to be drawn therefrom. Specific questions were submitted to the jury, all of which were answered in defendant's favor. These questions involved matters of law as well as of fact, and, in so far as they involved questions of fact, the answers were contrary to the evidence.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.