## OXFORD v. ROGERS. (No. 9709.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 24, 1921.)

**1. Customs and usages ⊕⇒12(2)—Admissible to explain contract, where so well known as to create presumption that parties knew it.**

Usage or custom is admissible in evidence to determine the terms of a contract, where the parties themselves have not explicitly defined such terms, where such usage or custom is so well established and generally known as to raise the presumption that the parties knew of it and contracted with reference thereto.

**2. Customs and usages ⊕⇒11—Cannot create contract.**

Usage or custom cannot create or bring a contract into being, where without it no contract exists.

**3. Customs and usages ⊕⇒10—Custom of dividing commissions among real estate dealers held insufficient to support judgment, where no agreement to be bound thereby.**

In an action by one real estate agent against another to recover one-half of commissions earned by the latter in finding a purchaser for an oil and gas lease, a judgment for plaintiff could not be sustained on the theory that a custom existed among real estate dealers to divide commissions, in the absence of some evidence to show that the contracting parties agreed to be bound thereby.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Brokers ⬅86(1)—Evidence insufficient to sustain recovery by one broker against another on quantum meruit.**

In an action by one real estate dealer against another to recover one-half of commissions earned by the latter in finding a purchaser for an oil and gas lease, plaintiff claiming that defendant's customer had been procured through his own efforts, a judgment for plaintiff could not be sustained on a plea of quantum meruit, in the absence of a showing of legal obligation on the part of defendant to pay for services claimed to have been rendered; the evidence disclosing that the services, if any, were voluntarily rendered by plaintiff without any contract.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Action by D. A. Rogers against Nape Oxford. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Chandler & Pannill, of Stephenville, for appellant.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, for appellee.

BUCK, J. D. A. Rogers, sued Nape Oxford for $1,125, alleged to be one-half of the amount received by Oxford as commission for the lease of 866 acres of land belonging to Mrs. S. J. Keith. Plaintiff alleged that three sons of Mrs. Keith came to Stephenville and saw plaintiff and made known to him that they desired to find a purchaser for an oil and gas lease on the land of their mother, or to find some one who would take an option to sell an oil and gas lease covering said land. Plaintiff alleged that on and prior to this time he was engaged in the real estate business in Erath county, and also in procuring parties who owned lands in Erath county to lease the same to other parties, or to give options to other parties, etc.; that defendant at this time was engaged in the business of buying and selling oil and gas leases on lands situated in Erath county, and in other counties in the state of Texas, and in securing options on such lands for the selling and delivering to his customers of oil and gas leases; that when approached by the sons of Mrs. Keith, plaintiff, not being in touch with the purchasers of oil and gas leases covering lands in Erath county, advised said persons to grant to the defendant an option on the lands owned by their mother; that the Keith brothers and the defendant at that time were not acquainted with each other, and plaintiff introduced them to defendant and the defendant did secure from them an option for 30 days to sell the oil and gas lease on the 866 acres, for the sum of $12.50 an acre, agreeing to pay defendant therefor the sum of 10 per cent. of the gross amount so received, and in addition thereto all over and above $12.50 an acre for which he might sell said lease; that prior to the expiration of the 30 days, Mrs. Keith sold the oil and gas lease covering said lands to J. E. Hickman, for the sum of $12,990 in cash; that after the execution of said lease to Hickman and before the option contract of the defendant had expired, the defendant asserted his right to the commission that was due him for the sale of said lease, and thereafter secured a settlement with Mrs. Keith and the said J. E. Hickman, by the terms of which the defendant was paid by said parties the sum of $2,250 in cash as a settlement for his interest in all rights and commissions accruing to him under and by virtue of the option contract aforesaid.

Plaintiff alleged that, according to the usual and customary usage among real estate men and those dealing in the sale of oil and gas leases, he was entitled to one-half of such commission, by virtue of his introduction to the defendant of the Keith brothers; that this custom was known to the defendant at the time the plaintiff procured for him the parties to execute the option in his favor, and was known to the plaintiff at the time he procured such customer for the defendant, and that defendant and plaintiff were acting under and by virtue of an implied contract arising from the usual and customary usage.

In the alternative, plaintiff alleged that he was entitled to one-half of the sum received by the defendant on the ground that said option contract was procured by the defendant solely and alone through the efforts of the plaintiff.

Defendant answered by way of general demurrer and general denial, and specially denied that defendant had any knowledge of the fact that plaintiff was engaged in the real estate business, or in securing options for leases in Erath county at the time the transaction pleaded by plaintiff occurred. He further pleaded that the option secured from the Keith brothers was not enforceable against Mrs. Keith, inasmuch as the sons had no power of attorney to represent their mother; that subsequent to the securing of said option, defendant, without the aid of plaintiff, secured an option from Mrs. Keith, and that he secured the promises from responsible parties to advance the money necessary to enforce said option, as against Hickman, and that Hickman agreed to pay him the sum of $2,250 as a compromise; that plaintiff rendered no assistance, offered no money, and claimed no interest in said option, so far as the defendant was advised, and that Mrs. Keith paid no part of the $2,250; and that said sum was not a commission for any sale of said lease, but was paid by Hickman as a compromise.

The cause was tried before the court without a jury, and judgment was rendered for plaintiff in the sum of $250, from which defendant has appealed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(238 S.W.)

The trial court filed his conclusions of fact and law, in which he found that the defendant was engaged in the business of a broker, and in purchasing and selling oil and gas leases for other parties, at Stephenville, on the 19th of August, 1918, and that plaintiff was not actively engaged in such business in Erath county or elsewhere, but that prior thereto he had handled some real estate on a commission basis, and was familiar with the custom and usages between dealers and those handling such business at that time; that it is a general custom in force and effect in the town of Stephenville, and in Erath county, and an understanding between those engaged in the sale of oil leases that, where one dealer took to another business, the party taking such customer to such dealer would be entitled to receive for his services in such matter one-half of the net profits received, and that this custom and usage applied to one who was not a dealer, as well as to those who were engaged in such business; that plaintiff knew of this custom, and whatever he did with reference to taking the Keith brothers to the defendant and helping to secure an option for the defendant for the sale of the lease was done in recognition of and in reliance on such custom, and that plaintiff expected to receive compensation therefor in accordance with the prevailing custom; that prior to said date Mrs. Keith, the owner of the 866 acres, had authorized her three sons to lease said lands for her for oil and gas development purposes, or to make an option contract with some other person to lease the same for oil and gas purposes, but that such authority as given by Mrs. Keith was verbal and not in writing. He further found that plaintiff had been approached by the Keith brothers, and had taken them to the defendant, and that defendant had secured from them an option contract for 30 days from August 19, 1918; that subsequently the defendant made repeated efforts to secure a purchaser for an oil and gas lease on the said lands, but was unable to do so, and that on September 5, 1918, Mrs. Keith personally executed an oil and gas lease in favor of J. E. Hickman; that defendant, on learning that Mrs. Keith had executed a lease in favor of Hickman, went to the home of Mrs. Keith, and secured from her a ratification of the option contract made between him and her sons; that thereupon he notified J. E. Hickman of his right and interest in said lands, and that he expected to stand for his rights under the contract that he had made with the sons of Mrs. Keith and under the ratification made in his favor by Mrs. Keith; that finally defendant and Hickman agreed upon a compromise, and Hickman paid the defendant $2,250; that plaintiff was the procuring cause in the execution of the option contract, and that as a result of plaintiff's efforts in procuring said option contract the defendant received the $2,250 from Hickman; that the defendant spent considerable time and money in his efforts to sell said lease prior to the time he settled with Hickman; and, taking into consideration such expenditures on defendant's part, that $250 would be a reasonable compensation to the plaintiff for the services rendered. Therefore the court rendered judgment for the plaintiff for $250.

[1, 2] By several assignments, plaintiff in error, hereinafter styled appellant, urges that usage or custom cannot make a contract where the parties themselves have made none. Usage or custom is admissible in evidence to determine the terms of the contract, where the parties themselves have not explicitly defined such terms, where such usage and custom is so well established and generally known as to raise the presumption that the parties knew of it and contracted with reference to it. In the case of First National Bank v. Burkhardt, 100 U. S. 686, 25 L. Ed. 766, it was sought to hold the bank liable by custom in reference to the deposit of checks, and the Supreme Court denied the proposition, and held that contracts must be made between parties themselves, either expressly or by their acts or conduct, and that no liability could be imposed upon any person or corporation by any usage or custom. The court said:

"A general usage may be proved in proper cases, to remove ambiguities and uncertainties in a contract, or to annex incidents, but it cannot destroy, contradict, or modify what is otherwise manifest. Where the intent and meaning of the parties are clear, evidence of a usage to the contrary is irrelevant and unavailing.

"Usage cannot make a contract where there is none, nor prevent the effect of the settled rules of law. Barnard v. Kellogg, 10 Wall. 390 [77 U. S. 19, 989]; Bliven v. Screw Co., 23 How. 433 [64 U. S. 16, 514]; Collender v. Dinsmore, 55 N. Y. 200; Adams v. Goddard, 48 Me. 212; Thompson v. Riggs, 5 Wall. 674 [72 U. S. 18, 706]; Dykers v. Allen, 7 Hill (N. Y.) 497."

In Josey v. Beaumont Waterworks Co. (Tex. Civ. App.) 183 S. W. 26, writ refused, the plaintiff's house was destroyed by fire, and the fire would have been prevented had not his water been cut off by the waterworks company. The evidence tended to show that the water was cut off for the reason that the pipes were broken. Plaintiff alleged a custom on the part of the waterworks company to notify its customers of broken pipes, and that this custom was known to the waterworks company, and alleged that its failure to notify plaintiff was negligence. The Court of Civil Appeals held that failure to observe the custom or usage would not make a contract, and that proof thereof can only be resorted to as showing the meaning of words, and custom will not be allowed to create an obligation inconsistent with the application

of the general principle of law. 17 C. J. p. 501; International Salt Co. v. Tennant, 144 Ill. App. 30.

In 2 Elliott on Contracts, § 1709, the following is said:

"Usage or custom cannot create or bring a contract into being where without it no contract exists. The contract arises out of the intention of the parties to do or not to do certain things, and, of course, they cannot be held to have contracted to do or not to do some things of which they neither had, nor are presumed to have had, knowledge or notice. In other words, usage or custom cannot make a contract when the parties themselves have made none. Thus, upon an issue in an action between two real estate brokers as to whether there was an agreement between them to divide the commissions for a certain sale, evidence of a usage among real estate brokers that two making a sale divide the commission equally unless a different arrangement is made is not admissible, for the existence of such a usage would not suggest a presumption that the brokers did or did not make a special arrangement for the division of the commission earned. So, a custom of attorneys in a certain county to become responsible for sheriffs' fees in their cases would not render an attorney liable for such fees in the absence of an express agreement, since the custom of certain persons to make express contracts is not sufficient to establish a contract with others by implication. So, proof of a custom of a bank to receive from its stockholders their stock in payment of their debts to the bank may not be shown to establish an implied contract to do so in a particular case."

[3] We conclude that the judgment cannot be sustained on the theory that a custom prevailed among dealers in real estate and leases to divide commissions under the circumstances here related, in the absence of some evidence to show that the contracting parties agreed to be bound by such usage or custom.

[4] We do not believe that the judgment can be sustained on plaintiff's plea of quantum meruit. In order for plaintiff to be entitled to recover on quantum meruit, it was necessary to show some sort of legal obligation on the part of the defendant to pay for the services claimed to have been rendered. In this instance, the services, if any, seem to have been voluntarily rendered by plaintiff without any contract. In Willis v. Jones, 11 Tex. 594, plaintiff, a district clerk, brought suit against his predecessor to recover compensation from him for extra services in bringing up the records of the court which had been omitted by his predecessor. The evidence showed the services seem to have been voluntarily rendered, without any contract on the part of Jones to pay therefor. The court said:

"We know of no law, requiring the present clerk to supply the faults committed by his predecessor; and if such delinquencies actually occurred, the delinquent clerk is responsible on his bond, and not to his successor in office."

In Dunn v. Price, 87 Tex. 318, 28 S. W. 681, Price brought suit against Dunn to recover certain commissions alleged to be due from a sale of the latter's property. Plaintiff alleged that he met defendant in Fort Worth, and in the course of their conversation defendant learned that he wanted to sell out and leave Fort Worth, and that he would take $30,000 for his hotel and a two-story business house on Main street. Plaintiff then asked defendant if he was in earnest about taking $30,000, and the defendant replied that he was, and if plaintiff did not think he was to just bring him a purchaser and see how quick he would make him a deed. Plaintiff eventually found a purchaser, and the deal was made, but defendant refused to pay plaintiff a commission. The Supreme Court held that there was no implied promise on the part of the defendant to pay the commission. The opinion says:

"There was no express promise to pay anything in this case; nor do we think that one can be clearly implied from the language used. If one requests another to perform a service for him, the law will ordinarily imply a promise to compensate him for the work. But where one, having property to sell, tells a broker that, if he will bring him a purchaser, he will sell at a certain price, it is by no means certain that he intends to imply a promise to pay a commission. The broker may get his compensation from the purchaser. In this case the defendant did not authorize the plaintiff to sell his property, nor did he employ him to sell it."

See, also, Pipkin v. Horne (Tex. Civ. App.) 68 S. W. 1000.

In Woods v. Ayres, 39 Mich. 345, 33 Am. Rep. 396, plaintiff brought suit against the defendant for certain sawlogs delivered by the plaintiff to the defendant under a certain contract for their delivery. The defendants offered to show by way of set-off a demand in their favor for moving certain logs. This plea was stricken out on exception by the plaintiffs on the ground that the acts of the defendants in moving the logs belonging to plaintiffs were voluntary and without any request therefor. The court said:

"Neither an express contract nor one by implication can come into existence unless the parties sustain contract relations, and the difference between the two forms consists in the mode of substantiation and not in the nature of the thing itself. * * * To constitute either the one or the other the parties must occupy toward each other a contract status, and there must be that connection, mutuality of will and interaction of parties, generally expressed, though not very clearly, by the term 'privity.' Without this a contract by implication is quite impossible."

We conclude that the judgment below must be reversed, and judgment here rendered for appellant; and it is so ordered.