### ALLIANCE INS. CO. v. CONTINENTAL GIN CO. et al. (No. 9347.)

(Court of Civil Appeals of Texas. Dallas. May 2, 1925. Rehearing Denied May 30, 1925.)

**1. Customs and usages ⊂⊃17—Custom or usage may not be proven to vary or contradict terms of unambiguous contract.**

Custom or usage may not be proven to vary or contradict terms of unambiguous contract.

**2. Insurance ⊂⊃153—Evidence of custom of local insurance agent on cancellation of policies to take out other insurance without application held admissible.**

In action on insurance policies, evidence of usage or custom of local agents, on cancellation of policies, to issue policies in another company similar to ones canceled without application by property owner, was not inadmissible as varying terms of policies providing for cancellation by giving notice, as it showed authority of agent to act for assured, and hence showed cancellation by mutual consent.

**3. Insurance ⊂⊃104—Holder of deed of trust held entitled to benefit of policies issued in another company by local agent on cancellation of policies, though it did not know of custom.**

Where both mortgagee and mortgagor committed to manager of mortgagor matter of insurance and selection of companies, holder of deed of trust which required property to be kept insured in such companies as holder might select was entitled to benefit of policies in another company taken out by local agent on cancellation of policies in company in which first insured according to custom known to such manager, regardless of whether mortgagee knew of such custom.

**4. Insurance ⊂⊃112—Issuance of new policies after cancellation held subject to ratification, and ratified, after loss.**

Where, on cancellation of policies, insurance agent, without application by insured, issued new policies in another company, pursuant to custom, insured could ratify such act after loss occurred, and did ratify it, by promising to return old policies, and making proof of loss under, and suing on, the new policies.

**5. Insurance ⊂⊃598—Allowing interest on money due under fire insurance policies at 6 per cent. held proper.**

Contracts of insurance, in which insurer agrees to pay money on happening of contingency insured against are within Rev. St. art. 4977, providing, in absence of agreed rate, for 6 per cent. interest after money is due and payable, under written contract ascertaining sum payable, and, in action on insurance policy, prayer for judgment for loss sustained by reason of fire and general relief warranted inclusion of interest at such rate in amount of judgment.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by the Continental Gin Company and another against the Alliance Insurance Company and another. From a judgment for plaintiffs defendant named appeals. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Coke & Coke, Locke & Locke, and Ralph Randolph, all of Dallas, for appellees.

LOONEY, J. From a judgment against it, on two policies of fire insurance issued in favor of the Handley Gin & Milling Company, assured, and the Continental Gin Company, loss payee in the policies, the Alliance Insurance Company prosecutes this appeal.

The Handley Gin & Milling Company, a partnership, and the Continental Gin Company, a corporation, brought suit against the Alliance Insurance Company and the Providence Washington Insurance Company, alleging in substance that on September 30, 1920, the Providence Company issued two one-year fire insurance policies for $5,250 each, covering certain gin buildings and machinery, in favor of the Handley Company, the owner, with loss payable clause in favor of the Continental Company, a creditor of the assured; that on October 19, 1920, Sellers & Co., of Fort Worth, Tex., local insurance agents, representing both defendants, were instructed by the Providence Company to cancel the policies above mentioned; that the agents attempted to comply with the instruction, and immediately issued two policies in the Alliance Company in like amounts in favor of same parties and covering the same property; that no notice was given either plaintiff of the purpose of the Providence Company to cancel the policies, nor was either plaintiff notified of the issuance of the policies in the Alliance Company until after the destruction of the property by fire; that, after the property was destroyed, the manager of the Handley Company, a Mr. Conn, visited the office of Sellers & Co., and was then, for the first time, informed of the attempted cancellation of the Providence Company policies and of the issuance in lieu thereof of the two policies in the Alliance Company; that the Alliance Company policies were delivered to the manager of Handley Company, who later made proof of loss and filed suit on both sets of policies.

─────────

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

The suit was primarily against the Alliance Company, and only in the alternative against the Providence Company. Both defendants by appropriate allegations answered. The Alliance Company claimed that the insurance contracts issued in its name never came into existence as valid contracts, whereas the Providence Company claimed that its policies were canceled and were not in existence as contracts at the time of the fire.

The nature of the case and the issues involved, in other respects, will be made apparent from the following:

The case was tried by the court, whose findings are sustained by the evidence, and are adopted as the findings of this court. In so far as material, they are as follows:

On September 30, 1920, the Providence Washington Insurance Company issued through Sellers & Co., its local agency at Fort Worth, in favor of the Handley Gin & Milling Company, two one-year policies for $5,250 each, insuring against loss or damage by fire certain gin buildings and machinery belonging to the Handley Company, with loss payable clause in favor of the Continental Gin Company.

On October 19, 1920, the Providence Company instructed its said agents to cancel the policies, and thereupon the agents, who were also local agents at Fort Worth for the Alliance Company, issued for the latter company two policies on the same properties in favor of the parties, in like amounts, protecting against the same hazard.

On October 21, 1920, a fire occurred that destroyed substantially all the property, the reasonable value of which, at the time, was largely in excess of the amount of the insurance.

The Handley Company was at the time indebted to the Continental Gin Company in the principal sum of $4,273, which including interest and attorney's fees, amounted, on the date of the judgment, to the sum of $6,540.28.

During the months of September and October, 1920, and for a long time prior thereto, W. E. Conn was the general manager of the Handley Company, and as such was authorized to procure and maintain fire insurance on its property, and was similarly authorized by the Continental Company, the lien creditor; that is to say, the latter company committed to him the duty of arranging for and maintaining fire insurance protection on the property, including the selection of the companies in which the insurance should be carried.

During September and October, 1920, Sellers & Co. were local agents at Fort Worth for both defendant companies, and were intrusted by them with necessary blanks, with authority to fill up, countersign, issue, and deliver policies to persons desiring insurance.

On receipt of instruction from the Providence Company to cancel the policies Sellers & Co., in order to keep the insurance of the Handley Company intact, immediately bound the risk in the Alliance Company, and on about October 20, wrote up the policies, but, before they were manually delivered to the Handley Company, the property was destroyed by fire.

Neither of the plaintiffs was informed, until after the fire, that the Providence Company had ordered its policies canceled nor of the issuance of the Alliance Company policies. On October 20, after the fire, the manager of Handley Company was informed by Sellers & Co. of these facts, and the Alliance policies were delivered to him. Later the manager caused proofs of loss to be made under both sets of policies, and suit was brought against each of the companies on the policies issued by it respectively.

During the months of September and October, 1920, there existed among well-established insurance agencies at Fort Worth, Tex., such as Sellers & Co., and also generally throughout the state, a usage or custom to the effect that local agents were expected to provide their customers with the best service possible, and would endeavor to anticipate the needs of their customers and keep their insurance protection good and intact against all contingencies. It was a part of such usage and custom of such an agency, in the event a company represented by it directed the cancellation of a particular policy issued in favor of a customer, to immediately, without first attempting to communicate with the insured, provide in lieu of the canceled policy similar insurance in another company represented by it. This usage was of long standing, and was recognized and acted upon by Sellers & Co., was well known to Mr. Conn, the manager of the Handley Company, at the time he gave the agency the insurance business of the company, and was relied on by him, and Sellers & Co. understood from the relation between them that the manager expected them to act for the best interest of the company in keeping its insurance protection good and intact.

In accordance with this usage, on October 19, 1920, when Sellers & Co. were ordered by the Providence Company to cancel the policies, they endeavored to continue the insurance protection in favor of the Handley Company, and to that end immediately bound the Alliance Company upon the risk, and on the next day, to wit, October 20, 1920, issued the two policies in the Alliance Company, dating them, however, as of October 19. The evidence justifies the conclusion that Sellers & Co. were authorized by the Handley Company and the Continental Gin Company to consent, on their behalf, to the cancellation of the Providence Company's policies and to

substitute therefor the policies issued in the name of the Alliance Company; and, furthermore, that the Handley Company, with full knowledge of the facts, after the fire, ratified and adopted the acts of the Sellers Company in the premises..

The policies issued by the Providence Company contained a provision to the effect that they might be canceled by the company giving five days' notice and returning to insured the pro rata premium for the unexpired term of the policy. Prior to the fire no notice of cancellation was given either of the plaintiffs, except as notice is imputed to them by notice to their agents, Sellers & Co., by virtue of the usage or custom hereinbefore mentioned, of which all the parties at interest had notice, and with reference to which they contracted.

The judgment rendered by the court was to the effect that the policies issued by the Providence Company were lawfully canceled and substituted by the policies issued in the Alliance Company; hence judgment was rendered in favor of the plaintiffs against the appellant, the Alliance Insurance Company, as follows: In favor of the Handley Gin & Milling Company for the sum of $3,584.50, and in favor of the Continental Gin Company, the loss payee, in the sum of $6,540.28, with interest on each judgment from the date of its rendition at 6 per cent. per annum.

Appellant presents for our consideration 44 propositions of law as being germane to 135 assignments of error, but, in our opinion, the contentions of appellant may be reduced to the following propositions:

(1) The major proposition of appellant is that the exceptions urged by it to pleadings alleging the existence of a usage or custom among local insurance agencies at Fort Worth, including the agency of Sellers & Co., should have been sustained. That its objections to the admission of evidence going to establish the existence of such usage or custom should have been sustained; and that the finding of the court to the effect that such a custom or usage did exist, based on inadmissible evidence, was erroneous, all for the reason that the policies of the Providence Company contained plain and unambiguous provisions directing what should be done before the company could cancel the same, that is, by giving five days' notice to the assured, and that this provision could not be varied or contradicted by the existence of the usage or custom in question.

(2) That notice to the assured of the cancellation of the policy was without effect, unless notice was also given the Continental Company, the loss payee.

(3) That after the destruction of the property by fire there could be no ratification of the act of Sellers & Co. in substituting one set of policies for another set covering the loss.

(4) That the judgment is excessive, in that interest should not have been allowed as a part of plaintiffs' damages in the absence of a prayer for the recovery of interest.

These contentions will be discussed in the order named.

[1] 1. Appellant's major contention, that is, that a custom or usage may not be proven to vary or contradict the terms of an unambiguous contract, states the law correctly (Early Foster Co. v. Truebar Bros. [Tex. Civ. App.] 243 S. W. 995; Oxford v. Rogers [Tex. Civ. App.] 238 S. W. 295), but the rule, in our opinion, is not applicable to the question now under consideration.

[2] The usage or custom proven in this case was not for the purpose of varying, nor did it, in fact, tend to vary or contradict the provision with reference to the right of the company to cancel its policies, but was established for the purpose of showing the authority of Sellers & Co. to act for the assured in making a new contract of insurance in lieu of, and in substitution for, the old contract theretofore made with the Providence Company. It is not contended by appellees that a unilateral cancellation of the policies was consummated by the Providence Company; the contention being that the cancellation was effected by mutual consent.

As we view the matter, the evidence going to establish the existence of the usage or custom was admissible and sufficient to establish the authority of Sellers & Co., as agents of the assured, to enter into the new agreement whereby the old policies issued by the Providence Company were canceled and the new policies issued on behalf of the Alliance Company were substituted therefor. The agreement to cancel the old and issue the new policies was an independent transaction, entirely aside from the provision in the policies in regard to a unilateral cancellation.

It has been repeatedly held by courts the country over, notwithstanding written terms such as appear in the policies in this case, that the agent's authority to make a subsequent agreement to cancel an existing contract of insurance may, with perfect propriety, be established by parol. See the following authorities: Dalton v. Norwich Union Fire Insurance Soc. (Tex. Com. App.) 213 S. W. 230; Austin Fire Insurance Co. v. Polemanakos (Tex. Com. App.) 207 S. W. 922; Globe Fire Insurance Co. v. Limburger (Tex. Civ. App.) 193 S. W. 222; Westchester Fire Insurance Co. v. McMinn (Tex. Civ. App.) 188 S. W. 25; Norwich Fire Insurance Co. v. Dalton (Tex. Civ. App.) 175 S. W. 459; Sterling Fire Insurance v. Comision Reguladora (Ind. Sup.) 143 N. E. 3; Schauer v. Queen Insurance Co., 88 Wis. 561, 60 N. W. 994; Ferrar v. Western Assur. Co., 30 Cal. App. 489, 159 P. 609, 611; Phœnix Insurance Co. v. State, 76 Ark. 180, 88 S .W. 917, 6 Ann.

Cas. 440; Allemania Fire Insurance Co. v. Zweng, 127 Ark. 141, 191 S. W. 903; Snyder v. Commercial Union Assurance Co., 67 N. J. Law, 7, 50 A. 510; Hollywood Lumber & Coal Co. v. Dubuque Fire & Marine Insurance Co., 80 W. Va. 604, 92 S. E. 858; Hamm Realty Co. v. New Hampshire Fire Ins. Co., 80 Minn. 139, 83 N. W. 41, 87 N. W. 933; Benedict v. Security Insurance Co., 147 App. Div. 810, 133 N. Y. S. 165; 26 Corpus Juris, p. 144; Joyce on Insurance, § 641, p. 1485 (and note 20); Williston on Contracts, § 591, 1828; Wigmore on Evidence, § 2441.

Without burdening the opinion with excerpts from these authorities, the following from Hamm Realty Co. v. New Hampshire Fire Insurance Co., supra, states the rule very succinctly. The court said:

"* * * The question presented for our determination is whether the action of the Haas Agency in ordering the old policy cancelled, and in writing the new one, under the facts, tended to show an acceptance of its delivery for plaintiff by such agency and was equivalent to the direct action of the plaintiff company itself to that effect, upon the theory that by long course of usage the agency was authorized in these respects to represent and act for it, and control its substantial rights, as its agent. There is no doubt that a general insurance agency, representing a number of companies, may act as the representative of the insurer and the insured for the purpose above mentioned, or, in other words, be the agent for both parties, within the limits suggested. * * * The long course of business usage and custom pursued in a uniform manner between the Haas Agency, representing the defendant and other companies, and plaintiff, in which the latter had permitted the former to act for it, would justify a conclusion that the agency was authorized to act for the plaintiff in waiving the notice of cancellation, and in accepting the new policy of insurance."

Therefore appellant's assignments and propositions calling in question the action of the court on exceptions to pleadings, on the admission of evidence, and the findings and conclusions of fact and law, in regard to the existence and legal effect of the usage or custom under consideration, are overruled.

[3] 2. Appellant makes the further contention that the rights of the Continental Gin Company were not affected by the attempted substitution of the new for the old policies, for the reason that notice of cancellation to the insured without also giving notice to the loss payee was ineffective; that the Continental Gin Company had its right of action against the Providence Company for the full amount of the debt it held against the Handley Company, notwithstanding the attempted cancellation, and therefore the court erred in rendering judgment in its favor against appellant.

The deed of trust held by the Continental Company against the Handley Company required the latter to keep the gin properties properly insured for the security of the debt in such companies as the Continental Company might select. The testimony of the general manager of the Handley Company was to the effect that the Handley Company and the Continental Company committed to him the matter of insurance and the selection of companies, with one limitation; that is, that companies operating on the mutual plan should not be selected.

In view of this uncontradicted evidence, it is our opinion that the acts of Mr. Conn, the manager, were binding on the Continental Gin Company. By committing to him the matter of securing and maintaining insurance on property, it consented to be governed by the usage of the insurance business at the places where he dealt, whether such usage was in fact known to it or not. We therefore overrule all assignments and propositions urged by appellant in support of this latter contention.

[4] 3. Another contention of appellant is that there could be no ratification of the act of substituting one set of policies for another covering the property after it had been destroyed by fire. On this point the undisputed evidence is that, after the property was destroyed, Sellers & Co., the local agents, explained to the general manager of the Handley Company, who, as to the matter of insurance, represented both the Handley Company and the Continental Gin Company, the reasons for canceling the old and the issuance of the new policies, and at the time the new policies were delivered to him by Sellers & Co. he promised to return the policies theretofore issued on behalf of the Providence Company, and thereafter the Handley Company made proof of loss under, and filed suit on, the policies issued on behalf of the Alliance Company. These facts, in our opinion, constituted an effective ratification on the part of both the Handley Company and the Continental Gin Company of the acts of Sellers & Co. in substituting the Alliance Company policies for the policies of the Providence Company, and constituted an adoption of the new insurance contracts.

On principle, we know no reason why an effective ratification of an insurance contract made without previous order, cannot be ratified after loss by the parties in whose behalf the contract was made. In announcing this doctrine, we are not unmindful of the rule that a contract of fire insurance cannot be legally consummated after the destruction of the subject-matter of the insurance. This rule follows from an elementary principle of law to the effect that a contract based on the existence of a thing is ineffective, if the thing itself has no existence at the time. This, however, is an entirely different matter from that of a contract of insurance

effected on property, while it is still in existence, by one who, without previous orders, assumes in good faith to act for the owner. In the latter case we see no reason why, after the loss of the property by fire, the interested parties, such as the insured and the loss payee, may not effectively ratify the act of the party who assumed, as agent, to contract in their behalf. This would not be an effort to contract for insurance after the property had ceased to exist, but the act of ratification by relating back would mature a contract begun prior to the destruction of the property.

The proposition just announced, as it relates to the subject of insurance, is comprehensively but clearly stated in 1 Mechem on Agency (2d Ed. 1914) § 524, as follows:

"Within the operation of the general rule also would come the case of the ratification by the insured, after a loss, of insurance effected for his benefit. That this might be done had been held by the English courts long before the difficult questions involved in Bolton Partners v. Lambert had presented themselves, and this holding had been followed in the United States. It is difficult to imagine a case wherein the fast and loose character of the principal's obligation, or his range of speculation whether to ratify or not, would seem to be more clearly illustrated. If no loss occurs, he may ignore the contract, and escape liability for the premium; if a loss happens, he may ratify and enforce the contract. As against the agency he may ratify even after payment. The case is exceptional, also, in the fact that ratification after loss enables the principal to do by ratification what he could not then himself do directly, namely, insure lost property; and a strong effort was made some years ago in the English courts to induce a reconsideration of the cases holding that it may be done, but it was declared that these cases were much too strong and of too long standing to be overruled. It is to be observed, however, that the case is not ordinarily so hard upon the insurance company as might, at first blush, appear to be the fact. In many of the cases, the premium had been already paid by the agent or he had made himself liable for it. In any case, moreover, in which the agent's liability had not been excluded, he would be liable for a breach of his implied warranty of authority if the principal did not ratify. What the company would lose in such a case would be the expected liability of the principal for the premiums."

This doctrine is also abundantly sustained by both the earlier and later text-writers on the subject of insurance and agency as well as by English and American decisions, as will appear from an examination of the following authorities, viz.: Hughes on Insurance (1828) 41, 42; Angell on Fire & Life Insurance (1854) § 79; 1 Phillips on Insurance (5th Ed. 1867) § 388; Flanders on Fire Insurance (2d Ed. 1874), 176, 434; 1 Wood on Fire Insurance (2d Ed. 1886) § 136; 1 Joyce on Insurance (1897) § 642; 2 May on Insurance (4th Ed. 1900) § 445; Vance on Insurance (1904) 495; Clement on Fire Insurance (1905) 427; Richards on Insurance (3d Ed. 1909) 294; Storey on Agency (1839) § 248; 1 Clark & Skyles on Agency (1905) 362, 363.

The following English cases support the doctrine: Lucena v. Craufurd (1808) 1 Taunt, 325; Routh v. Thompson (1811) 13 East, 274; Hagedorn v. Oliver-Son (1814) 2 M. & S. 485; Waters v. Monarch Fire & Life Assurance Soc. (1856) 5 E. & B. 870 (881); Gifford v. Queen Insurance Co. (1869) 1 Hannay (N. B.) 432.

The following American cases are in line with the doctrine: Finney v. Fairhaven Ins. Co. (1842) 5 Metc. (Mass.) 192, 38 Am. Dec. 397; Durand v. Thouron (1834) 1 Port. (Ala.) 238; Watkins v. Durand (1834) 1 Port. (Ala.) 251; Miltenberger v. Beacom (1848) 9 Pa. 198; Howard Fire Ins. Co. v. Chase (1867) 5 Wall. (72 U. S.) 509, 18 L. Ed. 524; Waring v. Indemnity Fire Ins. Co. (1871) 45 N. Y. 606, 6 Am. Rep. 146; Larsen v. Thuringia Amer. Ins. Co. (1904) 208 Ill. 166, 70 N. E. 31; Marts v. Cumberland Mutual Fire Ins. Co. (1882) 44 N. J. Law, 478; Snyder v. Commercial Union Assur. Co. (1901) 67 N. J. Law, 7, 50 A. 509; Finley v. New Brunswick (C. C. 1911) 193 F. 195; Boutwell v. Globe & Rutgers Fire Ins. Co. (1908) 117 App. Div. 904, 102 N. Y. S. 1127; 193 N. Y. 323, 85 N. E. 1087; 193 N. Y. 684, 87 N. E. 1115; Todd v. German-American Ins. Co. (1907) 2 Ga. App. 789, 59 S. E. 94.

The following from our own courts show that the rule announced elsewhere is recognized in this state, to wit: Pittman v. Harris (1900) 24 Tex. Civ. App. 503, 59 S. W. 1121; Southern Cold Storage & Produce Co. v. A. F. Dechman & Co. (Tex. Civ. App. 1903) 73 S. W. 545; Georgia Home Ins. Co. v. City of Smithville (Tex. Civ. App. 1899) 49 S. W. 412; National Fire Ins. Co. v. Oliver (Tex. Civ. App.) 204 S. W. 367; Phoenix Ins. Co. v. Am. Trust & Savings Bank (Tex. Civ. App.) 248 S. W. 819, 821.

We therefore overrule appellant's contention to the effect that, after the destruction of the property by fire, there could be no ratification by the insured of the act of Sellers & Co. in substituting the later for the earlier set of policies.

[5] 4. The final contention of appellant is that the judgment is excessive, in this, appellees were permitted to recover interest on the amount found by the court to be due, whereas it is claimed there was no prayer for such relief.

The statute of this state (article 4977, Rev. St.) provides:

"On all written contracts ascertaining the sum payable, when no specified rate of interest is agreed upon by the parties to the contract, interest shall be allowed at the rate of six per cent. per annum from and after the time when the sum is due and payable."

Contracts of insurance in which the insurer agrees to pay money on the happening of contingencies insured against are held by our courts to be "written contracts ascertaining the sum payable" within the meaning of the statute just quoted. Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. 578, 583; American Nat. Ins. Co. v. Fulghum (Tex. Civ. App.) 177 S. W. 1008, 1010; Great Eastern Casualty Co. v. Anderson (Tex. Civ. App.) 183 S. W. 802.

The trial court found that appellant was liable to pay appellees the respective amounts for which judgment was rendered. Necessarily, the court found that these sums were due and payable under the terms of the written contracts, and that appellant had wrongfully withheld payment. This being true, the court could not do otherwise than assess against appellant interest at the rate of 6 per cent. on the amount found by the court to be due under the policies from the date of the fire loss to the date of the rendition of the judgment; that is, if the pleading of appellees was sufficient to comprehend within its scope and meaning the item of interest.

Appellees did not mention interest in their prayer for relief, but the facts constituting their cause of action are alleged, and prayer is made that they (plaintiffs below) have judgment against defendants below "for the loss sustained by them by reason of the aforesaid fire," concluding with a prayer for costs and "general relief."

Was this prayer sufficient to justify the court in allowing interest on the amount found to be due under the policies? We think so. The prayer for judgment is sufficiently comprehensive to include all loss sustained. Under the undisputed facts of the case this prayer would not have been fully answered, if interest had been disallowed. The provision of the statute for 6 per cent. interest on sums due and payable under written contracts must be written into and considered a part of the contracts sued upon; hence interest at the rate of 6 per cent. provided by statute began to accrue when appellant withheld payment. The right of appellees to recover interest as an incident to, and as a part of, the fire loss that accrued under the policies was a legal right, and under the undisputed facts the court was without discretion to do other than allow interest. It is our opinion that the prayer of the appellees for judgment "for the loss sustained by reason of the aforesaid fire" was sufficient to justify the inclusion of interest in the recovery; in fact was, in effect, a prayer for the recovery of interest, as an element of loss incident to and as a part of the amount due and payable under the policies. H. & T. C. Ry. Co. v. Jackson, 62 Tex. 209; Ft. W. & D. C. Ry. Co. v. Greathouse, 82 Tex. 104, 111–112, 17 S. W. 834; Atchison, T. & S. F. Ry. Co. v. Smythe, 55 Tex. Civ. App. 557, 119 S. W. 892, 896.

Again, we are of the opinion that appellees were entitled to recover interest under their prayer for "general relief." Without lengthening the opinion further, we cite the following in support of the latter view, to wit: Trevathan v. Hall & Son (Tex. Civ. App.) 209 S. W. 448, 450, col. 2, § 5; City of Houston v. Lubbock, 35 Tex. Civ. App. 106, 79 S. W. 851; Hancock v. Haile (Tex. Civ. App.) 171 S. W. 1053, 1056, col. 1, § 7.

After having given due consideration to appellant's assignments of error and propositions of law, we fail to find reversible error; hence all assignments and propositions are overruled, and the judgment of the court below is affirmed.

Affirmed